No. 15.—JOHN M. BARKSDALE and others, plaintiffs in error, *vs.* ISAAC M. BROWN, guardian, &c. defendant in error.

[1.] It is not necessary to state, in the bill of exceptions, the *grounds* of objection to the judgment complained of. Stating the judgment excepted to, is sufficient.

[2.] A propounds for probate a paper, as the will of B. This paper makes A executor, and gives him a legacy. There is a caveat, and then a verdict and judgment, that the paper is not the will of B. Afterwards, C files a bill to set aside this verdict and judgment, and to be allowed to propound and prove as the will of B, all that part of the same paper, in which part A has no interest. To this bill A is not made *a party : Held*, that there is no equity in the bill.

Decision on demurrer, in Upson Superior Court, by Judge STARKE, May Term, 1854.

Caroline W. Bunkley, by her guardian, filed her bill, charging that her father, George W. Bunkley, from an infant, was taken and reared by his uncle, John Bunkley and his wife Macharine, and was much loved by them, they being childless; that Macharine Bunkley died, leaving a will, in which large legacies were left to complainant and other children of George W. Bunkley, (he being dead); that Dr. James Anderson was appointed executor thereof, and also took a legacy under the same ; that a caveat was entered to said will, on the ground that Anderson wrote the same, took a large interest under it, and that the will was never read to testatrix. On this ground,

the Jury found a verdict against the will. Complainant was then not one year old, and had no guardian to protect her rights. She afterwards applied to the Ordinary, for leave to make probate of said will, on various grounds; which probate was refused. The bill set forth the evidence in full, on the issue of *Devisavit vel non*, and charged that the complainant could not purchase Anderson's interest, so as to make him a competent witness, and that he would not voluntarily relinquish. The bill charged that one John M. Barksdale was the principal witness on the trial of the caveat; that he was largely interested in a former will revoked by the latter, and which former will is now offered for probate, taking under it the legacies given to complainant, with others, under the last; that the verdict obtained was *fraudulent and void*—1st. Because the testimony of said John M. Barksdale and one Matilda Towns, (another witness for caveators,) was false in several items specified in the bill. 2d. Because she was an infant and unrepresented at said trial. 3d. Because of newly discovered evidence set forth in the bill, and because James Anderson had in his possession the original draft of said will, and failed to produce it on the trial.

The bill charged that James Anderson knew that Mrs. Bunkley had read the will and knew its contents, and no other witness knew the fact, and insisted that he be made a witness, and the will set up, excepting his legacy.

The prayer was for a new trial, and for an injunction.

A general demurrer to this bill, for want of equity, was over-ruled, and this decision is assigned as error.

HILL & SMITH, for plaintiffs in error.

O. C. GIBSON and CHAPPELL, for defendant in error.

*By the Court.*—BENNING, J. delivering the opinion.

In this case, the defendant in error joined issue, with a protest, that neither the bill of exceptions nor the assignment of

Barksdale and others *vs.* Brown, guardian, &c.

errors, specified the error or errors complained of in the decision of the Court below.    What was meant by this protest, is explained by the position taken in its support, by Mr. Gibson, one of the Counsel for the defendant in error.    That position was this : "A bill of exceptions is the statement, in writing, of the objection made by a party in a cause, to the decision of the Court, on a point of law which is clearly stated therein".    The statement of the "*objection*".

Of error or of objection, the only specification contained in the bill of exceptions is, that the Court over-ruled the demurrer, and that the plaintiff in error excepted to that decision. Of the objections or grounds of objection to the decision, the bill of exceptions says nothing.    It is, therefore, against this omission that the protest is aimed.

Was it necessary that the *objections* to the decision, should have been stated in the bill of exceptions ?

The fourth section of the Statute to organize this Court, contains this passage : " all causes of a criminal or civil nature, may, for alleged error, in any decision, sentence, judgment or decree of any such Superior Court, be carried up", &c.    For alleged error in any decision—that is to say, for alleged error, *consisting* in any decision, or alleged error in *the making of* any decision.    The sense would be the same, had the words been, that all causes may be carried up, on an allegation that the Court erred, in such or such a decision, or on an allegation that such or such a decision was erroneous.    It is familiar language in the mouth of lawyers and non-lawyers, that "a Court erred in such a decision", or "in deciding so and so", when they mean to say a particular judgment was erroneous.    There is nothing, in this passage, which says, impliedly or expressly, that to carry causes up, it is necessary to do something more than allege a judgment to have been erroneous—that in addition to that, it is also necessary to state the objections, or grounds of objection, to the judgment ; in short, to state, in brief or at length, the argument used before the Court, in resistance to the making of the judgment.    Had

the passage said this, it would have said what would be equiv-alent to saying, that no cause should be carried up on a mere exception to a judgment—an exception for which no reasons were given—in favor of which no argument was made. And if no cause could be carried up on any thing except argu-ments—except "objections" stated to decisions, when would the lawyers, conducting cases in the Courts below, consider them-selves at liberty to stop arguing? What decisions would they consider themselves at liberty to let pass, without argument? What remoteness of arguments would they consider remote-enough to justify them in not using the arguments? What number of repetitions, of the same thing, would they consider numerous enough to warrant them in relying upon the memory of the Court to give them the benefit of the thing, if they should happen, afterwards, to want it for use in a bill of ex-ceptions? What stock of attention, on the part of Court and Jury, would not be worn out before the end of trials, conduct-ed on this plan? And this would be but a beginning. The losing lawyer would have to have his bill of exceptions, and that would contain all the objections urged to the decisions of the Court complained of—all those objections, whether good or bad—relevant or irrelevant—for knowing that he could urge, in the Court above, no objections but those urged in the Court below, and feeling it only the part of prudence to take all the chances, he would not leave a single one of those ob-jections out of his bill of exceptions. And then, how enor-mously would be swelled the expenses of litigation.

And after all, what would be the gain? What, in either Court? Would not the gain be a loss? Would not the effect of bringing into a case so much of the immaterial, be to hide the material—so much of the weak, be to dilute the strong—to make the salt become invisible in the water?

If, then, it were a doubtful question, whether this passage in the fourth section of the Statute to organize this Court, is not susceptible of a construction which would support the position of the defendant in error, the argument, from effects and con-sequences, requires us to say that that construction is one

which the passage ought not to have. But, indeed, it is *not* susceptible of that construction. And it has not, at least as a general thing, been practised upon as susceptible of that construction. The bills of exception which have been actually used, have, for the most part, contained no more than a statement of the particular judgment excepted to, together with the facts of the case. And the propriety of such bills is sanctioned by the form of a bill of exceptions, published by the Reporter of this Court, in connection with the rules of Court—a form which, before it was published, received, it is understood, the approval of each of the persons who then constituted this Court.

This passage, then, in the Statute, does not support the position of the defendant in error. There is another passage which, it may be thought, does that. It is this, in the same fourth section: "any cause of a civil nature, either on the Law or Equity side of the Superior Court may, in like manner, be carried to the Supreme Court, on a bill of exceptions, specifying the error, or errors, complained of in any decision or judgment", &c. Specifying *the error, or errors*, are the words, not specifying the objection or objections to the judgment complained of. The specification is to be of errors committed by the Court; that is, of wrong judgments rendered by the Court—not of objections to judgments urged by a party. This passage, indeed, is but in harmony with the previous one, which has just been considered.

So much for the Statute. I may remark, that giving the Statute this construction, is but making it correspond with the old law—the English law, regulating bills of exception. The Statute of 13 *Ed. I. c.* 31, authorized "exceptions" to decisions to be taken. It did not require the *grounds* of the exceptions to be stated. In practice, under the Statute, that is not done. (2 *Tidd.* 862. *Tidd's Appendix, ch.* 37, §46.

The protest, then, ought to be over-ruled.

Is there any equity in the bill, in this case? The Court below held that there was.

The prayer of the bill is, that the "verdict and judgment rendered in the matter of probate and caveat of the" "will of

Macharine Bunkley," may be annulled, "for fraud and newly discovered evidence"; that Tyrrell Barksdale and Stephen Harvey, and "all the rest of the heirs at law, of Macharine Bunkley, may be perpetually enjoined from further using said verdict and judgment, in behalf of said plea, in bar, filed by said defendant, in the matter of her (the complainant's) application for probate of said will"; that said Barksdale and Harvey Eusebius H. Hopkins, and Anna Hopkins, his wife, may be enjoined from proceeding further with the trial of the probate—and caveat of the instrument made by Macharine Bunkley in 1848; that the Superior Court of Upson County may be directed to allow the complainant to make probate of a part of the will of 1850, viz: all of it except the part which gives a legacy to James Anderson, and that she, the complainant, may have such other relief as she may be entitled to have.

James Anderson is not a party to the bill.

The great object of the bill is, to have annulled the verdict and judgment which decided that the instrument of 1850 was not the will of Macharine Bunkley. If this object can be attained, then another object of the bill becomes important, viz: the obtainment of evidence—the obtainment of the evidence of James Anderson, to assist in establishing that instrument of 1850, as the will of Macharine Bunkley.

James Anderson having been appointed the executor of that instrument, and having been given, by it, a legacy, is incompetent as a witness, to testify in support of the instrument. The complainant wants to use him as a witness in its support, and this object she seeks, in the bill, to accomplish thus: she prays that she, instead of him, Anderson, may be allowed to prove the instrument to be the will of Macharine Bunkley, and that in so proving it, she may be absolved from the duty of proving that part of it in which Anderson has an interest. All the rest of the instrument he would be competent, as a witness, to support.

The judgment which the bill seeks to annul, is a judgment, to one side of which James Anderson is the only party; certainly the chief party. It is a judgment in a case in which he,

as executor, was the propounder of the instrument of 1850, and others were caveators.

One of the grounds on which the bill puts its prayer for annulling this judgment, is fraud—fraud in the procurement of the judgment. Whether this fraud is fraud committed by Anderson, or fraud committed on Anderson, the bill does not state very distinctly. Assuming that the bill means to say the fraud is fraud committed by Anderson, then, the prayer of the bill, to set aside the judgment, becomes one involving not only Anderson's legal rights, but also his character for integrity.

These things being so, can the bill, without having Anderson as a party to it, have in it any equity? Most clearly not. In his absence, the great objects of the bill cannot be decreed—in his absence, the judgment to which he is a party cannot be annulled—in his absence, his name, both as executor and legatee, cannot be struck out of the will—in his absence, nothing worth doing can be done.

Inasmuch, then, as Anderson is not a party to the bill, there is no equity in the bill.

Why he was not made a party, we cannot tell. The same reasons which prevented his being made one, may continue to prevent it. If so, it will never become necessary to decide the other questions connected with this case—questions, some of them, both of much importance and much difficulty. At all events, it will be time enough to decide them when it has become necessary to decide them. Besides, if ever presented again for consideration, they may be presented upon a statement of facts different from that on which they are now presented—a statement, made up of allegations, especially as to fraud, more precise and certain than the statement in the present bill. Indeed, the only question for this Court is, whether or not the bill, as it stands, has any equity in it? And when the Court says it has none, it has given the full answer to the question; and were it to go further, and say that if the bill had equity in it, then, such and such other questions in the bill would be decided so and so, the Court would go beyond its sphere. The most that the Court can do, is to say there is no equity in the

bill, as the bill stands, but that the complainant may, if she pleases, either amend it or file a new bill.