## PACE v. PACE.

HINES, J.  1. An assignment of error upon a judgment awarding alimony and counsel fees in a proceeding under the Civil Code, § 2986, that such judgment is contrary to law, raises the question that the same is without evidence to support it; and a bill of exceptions to review such judgment, in which this is the sole assignment of error, will not be dismissed because the same does not specifically assign any error. *Barksdale* v. *Brown*, 16 *Ga.* 95; *Holst* v. *Burrus*, 79 *Ga.* 111 (4 S. E. 108); *Mathews* v. *Parker*, 124 *Ga.* 144 (52 S. E. 322); *Harwell* v. *Marshall*, 125 *Ga.* 451 (54 S. E. 93); *Patterson* v. *Beck*, 133 *Ga.* 701 (66 S. E. 911); *Cambridge Tile Co.* v. *Scaife Co.*, 137 *Ga.* 281 (73 S. E. 492). In *Adams* v. *May*, 145 *Ga.* 234 (88 S. E. 928), *Holland* v. *Holland*, 147 *Ga.* 32 (92 S. E. 538), *Haley* v. *Com. Nat. Bank*, 147 *Ga.* 555 (94 S. E. 1013), and *Edwards* v. *Finley*, 150 *Ga.* 200 (103 S. E. 156), error was assigned upon judgments without stating any ground upon which it was based.

2. In this State the husband is the head of the family, and as such has the right to fix the matrimonial residence without the consent of the wife; and the wife is bound to follow her husband, when he changes his residence, provided the change is made by him in good faith, and not from whim or caprice, or as mere punishment of the wife, or to a place where he does not intend to reside, or to a place where her health or comfort will be endangered. Hardenbergh *v.* Hardenbergh, 14 Cal. 654; Babbitt *v.* Babbitt, 69 Ill. 277; Boyce *v.* Boyce, 23 N. J. Eq. 346; Cutler *v.* Cutler, 2 Brewst. (Pa.) 511; Angier *v.* Angier, 7 Phila. (Pa.) 305; 15 Am. & Eng. Enc. Law (2nd ed.), 812; *Sindall* v. *Thacker*, 56 *Ga.* 51; Civil Code (1910), § 2183. This rule is not altered by an antenuptial agreement to the contrary. Hair *v.* Hair, 10 Rich. Eq. (S. C.) 163. And this is especially true, where the husband, who was 63 years old, had been a farmer all his life, was unskilled in any other trade, and who, after trying to live in a city and support himself, wife and her children, was unable to do so, because he was unable to obtain any work and incapable of earning a living in the city.

3. Where the husband was unable to earn a living in town or city, for the reason above stated, and where he had a farm in a good community, upon which he could make a living for himself and wife and her minor children, to which home he had entreated his wife to come and live with him, which, a fair analysis of the evidence discloses, she refused to do, because of an antenuptial agreement, between her and her husband, by which he was to take her from the country to a named town or city, upon the faith of which she married him; and where the husband could get at the utmost $175 per annum for rent of his farm, and where he had no other income or means of support than what he made on or derived from his farm, and where it does not appear that the husband had ever treated his wife cruelly, otherwise than failing to furnish her all of her support while living in the city, and none after her refusal to go and live

with him on his farm, the refusal of the wife to live in his home on the farm was, in effect, her abandonment of him (Hair v. Hair, supra), although he left her, when she refused to go, for the purpose of living at his farm home; and such abandonment of the husband by the wife without just cause will defeat her recovery of alimony and attorney's fees under the Civil Code (1910), § 2986. *Fuller* v. *Fuller*, 108 *Ga.* 256 (33 S. E. 865); *Davis* v. *Davis*, 145 *Ga.* 56 (88 S. E. 566); *Brisendine* v. *Brisendine*, 152 *Ga.* 745 (111 S. E. 22).

4. Under the circumstances, the grant of $30 per month to the wife as alimony, and $50 for attorney's fees was an abuse of discretion on the part of the trial judge.

*Judgment reversed. All the Justices concur.*

No. 3181.    DECEMBER 22, 1922.

Temporary alimony, etc.   Before Judge Irwin.   Paulding superior court.   February 15, 1922.

This was a proceeding by the wife against her husband, for alimony and attorney's fees, under the Civil Code (1910), § 2986. The parties were married in February, 1921, and separated in December, 1921, since which time they have lived continuously apart.   From the evidence introduced by the wife, the Judge was authorized to find that she would not marry the defendant until he agreed to carry her away from the settlement in which they lived to Dallas or Atlanta; that he promised to take care of her four sons, respectively twenty, eighteen, thirteen, and eleven years of age, and to provide for them as if they were his own children; and that the wife would not have married him if he had not agreed to the foregoing terms.   After their marriage they lived at his home until they could arrange to move to Dallas or Atlanta.   While living there, the children of the husband, all of whom were grown, by their conduct made life so miserable that they moved to the home of the former husband of the wife, and lived there until June.   During the time they lived at her home the husband made no arrangements to carry out his said agreement.   In June the wife visited Atlanta to see relatives. While there her husband came to Atlanta and rented a house in which they lived until December, when they separated.   During their residence in Atlanta the husband drank liquor continuously, would come home drunk, kick the furniture around, and raise such a disturbance that the wife feared for the safety of her life and the lives of her children.   While in Atlanta the husband furnished the wife no money for living expenses and clothing.   She had to depend on the goodness of neighbors for the necessities of life.   He

would buy groceries and not pay for them; and the wife had to pay for them. In December, 1921, the husband wilfully abandoned the wife, leaving her without any means of support, and has continuously refused to support her or her children. She has no money, and is in destitution. She was formerly the wife of J. N. Fuller, who died leaving 75 acres of land which was set apart as her year's support. In the fall of 1921, she sold this land for $2000, which was no more than sufficient to pay her debts which aggregated $1895. She was in bad health, and had been in bed for several days before the trial. She was without money to pay the doctor's bill or to buy medicine, and for lack of money was forced to live in a house unfit for habitation. She was forced to spend her own money and borrow money with which to buy food for herself and children. The husband partook of these provisions. Once she had to sell her cow to pay rent of the house in which they lived. Their grocery bills which she had contracted for the support of the husband were unpaid and long past due, as she was unable to get the funds with which to pay them. Her children have been without sufficient clothing or school-books. They were able to go to school only because relatives contributed the money for that purpose. Her two boys who are old enough to work and support her are without work and can not secure employment.

For the defendant it was shown that on February 12, 1922, he, D. T. Harris, and J. O. Pace went to see the plaintiff, in order to bring about a reconciliation between her and her husband. In the presence of Harris and J. O. Pace, he begged his wife to come back to the farm and live with him, which she refused to do. The husband asked her what were her reasons for not going, and she replied that she would not tell him then, but would later. He asked her if he had ever mistreated her in any way, and she said he had not. He asked if his children had mistreated her, and she answered they had not. She admitted she had never seen him drinking or otherwise misbehaving. He said he proposed to do anything in his power to make her happy, if she would go back with him. She said she would go anywhere else except to his farm, and would not go there. He told her he could not do as well anywhere else as on his farm. She having said she did not want to go there because of so much liquor having been there, the husband promised to see that none ever came to their home, and for her

protection, if she was afraid, would put a telephone in the house, so she could keep in touch with the sheriff. He promised to give bond and security that his children would not come about her, if she so wished. He said he would furnish her and her two sons a conveyance to go anywhere they desired, and they could have the income from the farm while they lived, and if he died first he would see to it that she had the use of the farm as long as she lived; to all of which she turned a deaf ear. She complained he did not sometimes feed the cow, but admitted he furnished the feed. Neighbors of the husband testified that they lived next door to him during eight months of 1921, saw him daily, and never saw him drunk or drinking, so far as they could tell. His daughter testified that in the spring of 1921 she heard the plaintiff begging the defendant to move to Atlanta. He hesitated for the reason he was afraid he could not make a living there; and the wife said she had some cows and they might take boarders, and try it for the balance of the year, and if they could not make a living she would go back to the farm with him at Christmas. Mrs. Belle Baker, A. R. Pace, J. O. Pace, L. L. Pace, Mrs. Effie Parsons, and W. O. Pace testified they were the only children of the defendant living in that part of the State where the plaintiff resided, that none of them ever had any trouble with plaintiff or any of her children, that all of them were married with families, except L. L. Pace, who resides with Mrs. Baker, that their homes are now and have always been open to their stepmother and they would welcome her at any time, that they would be glad to see her return and live with their father, as he seemed disconsolate without her, that they would make any sacrifice for their father, who had always been kind and considerate, and they would not visit her home if their stepmother desired them not to do so, or in case of their father's illness. B. R. Parsons testified he had been living in a house of defendant on his place in Paulding County; that defendant asked him to move into another house in order that defendant and his wife might have this house to live in if she moved back with him; and that he will give up the house if Pace and his wife want it. The husband is 63 years old, is a farmer, has done nothing except farm, is without education and not skilled in any other business. He is a man of good character, a good farmer, and could make a good living for himself and wife on the farm, but not at any other

calling. He lives in a moral community. In May, 1921, he conveyed his farm to three of his sons, reserving a life-estate for support of self and wife. It was shown the farm was not worth more than $3000, but was located conveniently to churches and schools. The husband had pressing debts amounting to $285, which he could not pay. His personal property is worth $300, including live stock. A. R. Pace and L. L. Pace testified that on or about December 30, 1921, they went with their father to Atlanta to see if he could prevail on his wife to come back to the farm and live with him. He told her he could not make a living in Atlanta, and begged her; but she refused to go back with him, saying she would rather live in Atlanta, giving no other reason.

The court granted to the wife $30 per month as temporary alimony and $50 as attorney's fees. To this judgment the husband excepted on the ground that it was contrary to law.

*A. L. Bartlett* and *W. E. Spinke,* for plaintiff in error.

*A. J. Camp, L. P. Camp,* and *C. B. McGarity,* contra.