45442.   STATE FARM MUTUAL AUTOMOBILE INSURANCE
COMPANY v. SNYDER et al.

ARGUED JULY 9, 1970—DECIDED SEPTEMBER 8, 1970—
REHEARING DENIED OCTOBER 7, 1970.

*Greer & Murray, Malcolm S. Murray, Kenneth C. Pollock,* for appellant.

*Caldwell, Bridges & Page, Richard T. Bridges, Donald A. Page, Harry A. Crawley,* for appellees.

HALL, Presiding Judge. State Farm cites four Georgia cases in which the exclusion in question was found applicable. *Morris v. State Farm Mut. Auto. Ins. Co.,* 88 Ga. App. 844 (78 SE2d 354); *Varnadoe v. State Farm Mut. Auto. Ins. Co.,* 112 Ga. App. 366 (145 SE2d 104); *Teems v. State Farm Mut. Auto. Ins. Co.,* 113 Ga. App. 53 (147 SE2d 20); *Keene v. State Farm Mut. Auto. Ins. Co.,* 114 Ga. App. 625 (152 SE2d 577). In each case there was some close blood relationship, such as we have here, and some other factor tending to show a degree of independence from the family (e.g., employed adult children who paid board at home; husband who was sleeping in his attached office rather than the marital bed). Nevertheless, each of these various family relationships operated within a "domestic establishment under single management," the definition of "household" as applied to this exclusion. 8 Blashfield Auto. Law & Practice p. 70, (3d Ed.), § 318.4; *Keene v. State Farm Mut. Auto. Ins. Co.,* supra.

The drafters of the clause had some actuarial purpose in mind. Their choice of words was not casual. The clause does not apply, for example, to a relative, however close, living elsewhere, nor to a resident of the same household who is not a "member of the family" (a term including not only a blood relative, but also one who enjoys all the prerogatives of family life). What then, is the purpose of the exclusion? "To safeguard the insurer against the

natural partiality of the insured to assist the injured person when he is a member of the family circle." 7 Appleman, Insurance Law & Practice, pp. 389, 390, § 4411; State Farm Mut. Auto. Ins. Co. v. James, 80 F2d 802; Cartier v. Cartier, 84 N. H. 526 (153 A 6).

This statement only takes us half way. It does not tell us what there is about a "family circle" that significantly raises the probability of bending evidence in its favor (an answer which would also give us a clue for identifying this group). Would one be less likely to "assist" an injured mother who had an apartment across town than one living in the same house? The drafters think so. Therefore, the natural affection of the relationship is not the determining factor. The key difference may be that in a truly unified household (the single domestic establishment) there is an assumption of pooled financial responsibility, even though the various members contribute independently to the pot. There is an assumption that the insured would, as a matter of course, bear the expenses resulting from the injury (by either upping his share or helping to cut down generally) and that life would continue as usual; that the injured family member would not be barred from his place at the table or the TV even though unable to work and pay board for awhile; and that the increased family doctor bills would be paid (or unpaid) according to custom. In this situation, the insured can only gain financially by the friendly lawsuit. The same assumptions cannot be made where people of the same relationship maintain separate establishments. Whatever our notions of familial duty, we cannot assume that the insured would begin providing groceries and supplies (or money for them) to one who has formerly provided his own, or would assume responsibility for medical bills which were formerly none of his affair. On the contrary, he might believe that the other had (or should have) made adequate provision against such emergencies.

The critical distinction when a relative of the insured is injured should therefore be whether separate domestic establishments are maintained. "A common roof is not the controlling element." 12 Couch on Insurance 2d, 495, § 45.520. It is rather a conclusion based on the aggregate details of the living arrangements of the parties. In a situation very similar to the one here, the Pennsylvania Court found there was no common household. See Hoff v. Hoff, 132 Pa. Super. 431 (1 A 2d 506).

We cannot say as a matter of law that Mrs. Snyder was living in the Harned household. There is evidence which, if believed, would authorize a jury to conclude that she maintained her own domestic establishment, although under the same roof, and therefore another "household" within the meaning of the policy.

The trial court did not err in denying the motion for summary judgment.

*Judgment affirmed. Evans, J., concurs. Deen, J., concurs in the judgment.*