310 So.2d 200

George FLEMING and Jeffrey Lance Fleming, a minor, et al.

v.

ALABAMA FARM BUREAU MUTUAL CASUALTY INSURANCE COMPANY.

SC 1103.

Supreme Court of Alabama.

March 6, 1975.

Rehearing Denied April 3, 1975.

Merrill & Harrison, Dothan, for appellee.

Farmer & Farmer, Dothan, for appellants.

BLOODWORTH, Justice.

This is an appeal by defendants Fleming from a summary judgment granted plaintiff, Alabama Farm Bureau Mutual Casualty Insurance Company, in a declaratory judgment proceeding filed by the insurer.

Appellant Jeffrey Fleming, a minor who sues by his father and next friend, George Fleming, brought an action in the Circuit Court of Houston County against Mrs. Alberta Fleming (grandmother of Jeffrey and mother of George) alleging that Jeffrey received injuries while riding as a passenger in an automobile driven by Mrs. Fleming as a proximate result of Mrs. Fleming's negligence or wantonness. George Fleming brought a derivative action against Mrs. Fleming seeking to recover medical expenses incurred on behalf of Jeffrey. The suits also named as defendants the driver of a second automobile involved in the accident.

Alabama Farm Bureau, the liability insurance carrier for Mrs. Fleming, then brought the instant declaratory judgment proceeding to determine whether it must defend Mrs. Fleming against the claims of her son and grandson and pay any judgment rendered against her. On motion of the insurance company, the trial court enjoined prosecution of the personal injury actions pending this determination.

The insurer moved for summary judgment based on a policy exclusion, accompanying the motion with the deposition of appellant George Fleming. The trial judge granted the motion and rendered a summary judgment, making certain findings of facts and determining that the insurance company is not obligated under its policy to defend or pay the claims of George and Jeffrey Fleming.

The policy exclusion upon which the summary judgment is based provides as follows:

"EXCLUSIONS—INSURING AGREEMENTS I AND II

"This insurance does not apply under:

\*     \*     \*     \*     \*     \*

"(f) Coverage A, (1) \* \* \* (2) to bodily injury to the insured or any member of the family of the insured residing in the same household as the insured; \* \* \*"

Thus, the sole question before this Court is whether or not *as a matter of law,* the minor plaintiff was a *member of the family* of the insured Mrs. Alberta Fleming *residing in the same household as the insured at the time of the accident causing his injuries.*

With respect to this issue, the facts are disclosed by the deposition of George Fleming which shows the following.

The minor plaintiff Jeffrey Fleming lives with his father, mother, and one brother in a six-room house. Mrs. Alberta Fleming, the insured, and her husband, Emmitt Fleming, also occupy a part of the house. The house is owned by one E. R. Solomon who does not charge rent for its occupancy. (It appears that George Fleming did at one time look after some cows belonging to E. R. Solomon for which it may be inferred the house was let to him rent free. He does not do so now.) The house is divided by a hall. Alberta Fleming and her husband Emmitt Fleming occupy two bedrooms on one side of the hall. George Fleming, his wife, and their two children occupy a bedroom and a living room on the other side of the hall. The house has one bathroom which is shared by all. The kitchen which is located at the end of the hall is also shared.

George Fleming buys groceries for himself, his wife, and children. Emmitt Flem-

ing buys groceries for himself and his wife Alberta. Some staple items, such as sugar and flour, are shared. Emmitt and Alberta Fleming do not eat breakfast or lunch with George Fleming, his wife, and two children. The evening meal is usually shared by all. George Fleming and Emmitt Fleming each pay half of the utility bill.

Emmitt Fleming and his wife Alberta both have full-time jobs as does George Fleming. George Fleming's wife takes care of the two children and does not work outside the home.

Emmitt Fleming owns his own automobile and two trucks which he uses for business and pleasure. His wife Alberta owns a car which she likewise uses. It is not clear whether Alberta's car or her husband Emmitt's car was the vehicle involved in the accident. Emmitt is the "named insured" in the suit policy, but Alberta is an "insured" as that term is defined in the suit policy. George Fleming owns an automobile which he and his wife use and upon which the same insurer has issued a separate policy of insurance.

George Fleming who is thirty-one years of age makes the decisions for himself, his wife and children. Emmitt Fleming does the same for himself and his wife.

We note at the outset that the ultimate burden of proof as to the applicability of the exclusionary clause rests with the movant-insurer, which also bears the burden to show that there is *no genuine issue as to any material fact* and that it is entitled to judgment *as a matter of law.*

The same or a similar exclusionary clause has been before this Court on several previous occasions.

The first such case appears to be Holloway v. State Farm Mutual Automobile Insurance Co., 275 Ala. 41, 151 So.2d 774 (1963). In *Holloway* the insured was an elderly widow. The deceased, also an elderly widow, was the insured's sister. Until the deceased's death, the two lived in their old family home which was owned by the insured. The deceased paid no rent and expenses were shared. This Court affirmed the trial court's final decree which held that the deceased was residing in the household of the insured.

In Blow v. State Farm Mutual Automobile Insurance Co., 284 Ala. 687, 228 So.2d 4 (1969), this Court reached the same result on facts almost identical to those in *Holloway,* supra. (In *Blow,* insured was a brother-in-law, who with his wife, shared house, meals, furniture, with deceased, sister of his wife.)

A similar exclusionary clause was before this Court in Alabama Farm Bureau Mutual Casualty Insurance Co. v. Preston, 287 Ala. 493, 253 So.2d 4 (1971). The question there was whether or not the insured's married daughter resided in the insured's household within the meaning of the policy exclusion. The daughter was living with her parents while her husband was in military service overseas. This Court reversed a final decree against the insurer because the decree was unsupported by the evidence.

In each case this Court necessarily rested its determination as to whether the injured party was a "member of the family of the insured, residing in the same household as the insured" on the particular facts of that case. In each opinion, the facts which show the living arrangements of the injured party and the insured are set out at length and discussed in detail. Nevertheless, there clearly appears to be a common rationale upon which these decisions rest. In *Holloway,* supra, the Court relied on, and quoted with approval, the language and reasoning of the Minnesota Supreme Court in Tomlyanovich v. Tomlyanovich, 239 Minn. 250, 58 N.W.2d 855 (1953) as follows:

" 'It is obvious that the word (family) is one of great flexibility and has "many different meanings according to the connection in which it is used." (Citation omitted.)'

" 'Here, the word "family" is used in a clause restricting the liability of an indemnity insurer in an automobile policy. Its obvious purpose is to exempt the insurer from liability to one who would naturally and inevitably be partial to another because of the close filial ties which exist between members of the same family circle living in the same household. The same reasons exist for restricting its liability to those not members of such family circle whether the injured party is the head of the household, a child or spouse of the head, or simply a member of it. Under these circumstances, the words used should be given that meaning which they ordinarily would have in order to effectuate the obvious purpose intended by the exclusionary clause. The trial court correctly held that plaintiff was within the excluded class.' " (275 Ala. at 44, 151 So.2d at 776)

In *Blow,* supra, the Court relied upon, and quoted with approval from, Hunter v. Southern Farm Bureau Casualty Insurance Co., 241 S.C. 446, 129 S.E.2d 59 (1962), which in turn is based on *Tomlyanovich,* supra. In *Blow,* supra, this Court wrote, quoting from *Hunter*:

" * * * The purposes of the exclusion clause is to exempt the insurer from liability to those persons whom the insured, on account of close family ties, would be apt to be partial in case of injury. Tomlyanovich v. Tomlyanovich, 239 Minn. 250, 58 N.W.2d 855, 50 A.L.R.2d 108; (Citation omitted.)

"In the light of the clear purposes intended to be accomplished by the exclusionary clause in question, we think that the term 'family,' as here used, includes 'such persons as habitually reside under one roof and form one domestic circle.' (Citation omitted.) If the injured person is a member of such family circle, liability of the insurer is excluded. (Citation omitted.)" (284 Ala. at 692, 228 So.2d at 8)

Thus, in each case the crucial question was whether the injured party and the insured were part of one domestic circle residing under the same roof. However, in none of these reported cases does the court delineate the bounds of the "domestic circle" because the Court was not faced with the factual situation of two traditionally independent domestic units living under one roof and sharing in common a kitchen and bath.

A Pennsylvania court was faced with such a situation in Hoff v. Hoff, 132 Pa. Super. 431, 1 A.2d 506 (1938). The facts in *Hoff* are quite similar to those in the case at bar except that there the injured party was the daughter-in-law of the insured. The injured party, her husband, and child occupied the living room and two bedrooms in a house owned by the insured.

The other rooms were used by insured and his wife. The bathroom and kitchen were necessarily used by all in common. Usually, separate meals were prepared and served by insured's wife for insured and herself and by the injured party for her husband, child, and herself. Occasionally, one meal was served for all. The injured party did most of the housework in exchange for occupying the rooms rent free. The grocery accounts were kept separate. The utility bills were arbitrarily divided in half.

On these facts, the Pennsylvania court held, inter alia:

"Had plaintiffs and their son on the one hand, and defendant and his wife on the other continued to live in separate houses or apartments, they, without doubt, would have constituted two families or two households notwithstanding their relationship. Each group would have been a distinct and separate domestic establishment with its own head. When these two families arranged to live in one dwelling the result was not necessarily the creation of one household. The term 'household' is generally recognized as somewhat broader in its

implication than the term 'family.' It is possible that those constituting a family may become a part of another's household, although the words 'family' and 'household' are often interchangeably used. (Citations omitted.)

\*   \*   \*   \*   \*   \*

"Neither relationship nor the presence of all the parties within one dwelling is the determining factor, but rather the existence of such domestic arrangements and circumstances as would create separate domestic establishments, each having its own head and separate management. Sole control of the entire dwelling by husband plaintiff was not necessary in order that it might be the abode of his own household; nor did the fact that defendant owned the dwelling in which plaintiffs and their son resided, and in which defendant and his wife also lived, make him the head of a household which included plaintiffs and their son, as contemplated by the terms of defendant's policy. \* \* \* From the method of living and the domestic arrangements, the jury could properly conclude that there were two separate households under one roof, husband plaintiff being the head of one, and defendant head of the other. In our opinion, under the facts, *it cannot be held as a matter of law that plaintiffs were 'residing in the same household with the assured [defendant].' The verdicts of the juries must therefore be sustained.*" [Emphasis supplied.] (132 Pa.Super. at 435, 436, 1 A.2d at 507, 508)

The case of State Farm Mutual Automobile Insurance Co. v. Snyder, 122 Ga.App. 584, 178 S.E.2d 215 (1970), is not only factually similar to the instant case but is procedurally identical. In *Snyder* the Court of Appeals of Georgia was presented with an appeal by the insurer from a denial of the insurer's motion for summary judgment. There, faced with an identical "exclusionary" clause, the Georgia court held (per Presiding Judge Hall, now Associate Justice, Supreme Court), inter alia:

"The drafters of the clause had some actuarial purpose in mind. Their choice of words was not casual. The clause does not apply, for example, to a relative, however close, living elsewhere; nor to a resident of the same household who is not a 'member of the family' (a term including not only a blood relative, but also one who enjoys all the prerogatives of family life). What then, is the purpose of the exclusion? 'To safeguard the insurer against the natural partiality of the insured to assist the injured person when he is a member of the family circle.' (Citations omitted.)

"This statement only takes us half way. It does not tell us what there is about a 'family circle' that significantly raises the probability of bending evidence in its favor (an answer which would also give us a clue for identifying this group). Would one be less likely to 'assist' an injured mother who had an apartment across town than one living in the same house? The drafters think so. Therefore, the natural affection of the relationship is not the determining factor. *The key difference may be that in a truly unified household* (the single domestic establishment) *there is an assumption of pooled financial responsibility,* even though the various members contribute independently to the pot. There is an assumption that the insured would, as a matter of course, bear the expenses resulting from the injury (by either upping his share or helping to cut down generally) and that life would continue as usual; that the injured family member would not be barred from his place at the table or the TV even though unable to work and pay board for awhile; and that the increased family doctor bills would be paid (or unpaid) according to custom. *In this situation, the insured can only gain financially by the friendly lawsuit. The same assumptions cannot be made where people of the same relationship maintain separate establishments.* \* \* \*

*"The critical distinction when a relative of the insured is injured should therefore be whether separate domestic establishments are maintained. 'A common roof is not the controlling element.'* 12 Couch on Insurance 2d, 495, § 45.520. It is rather a conclusion based on the aggregate details of the living arrangements of the parties. * * *

*"We cannot say as a matter of law that Mrs. Snyder was living in the Harned household.* There is evidence which, if believed, would authorize a jury to conclude that she maintained her own domestic establishment, although under the same roof, and therefore another 'household' within the meaning of the policy.

*"The trial court did not err in denying the motion for summary judgment."* [Emphasis supplied.] (122 Ga.App. at 585–87, 178 S.E.2d at 216, 217)

This case was again before the Georgia court on appeal by insurer from a directed verdict for the insured. The court reversed holding that a question of fact had been presented for the trier of fact. State Farm Mutual Automobile Insurance Co. v. Snyder, 125 Ga.App. 352, 187 S.E.2d 878 (1972).

The Pennsylvania and Georgia courts applied the same rationale which was followed by our Court in *Holloway, Blow,* and *Preston, supra.* When faced with factual situations more complicated than in *Tomlyanovich, supra,* and in our Alabama cases, the Pennsylvania and Georgia courts did not mechanistically hold that members of a family residing under one roof were automatically part of the same family circle but looked to the facts of the situation in light of the purpose to be served by the exclusion to determine whether the parties were in fact members of the same family circle. We agree with those courts in their applications of the rule.

In his judgment granting the insurer's motion for summary judgment, the trial judge made extensive findings and conclusions of fact on the issue as to whether the injured grandson resided in the same household or family circle as the insured Alberta Fleming.

In Ray and Plough v. Midfield Park, Inc., 293 Ala. 609, 308 So.2d 686 [1974], this Court held that on motion for summary judgment the trial judge does not possess the power to make findings of fact but only to determine that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.

■ Applying the law to the facts as disclosed by the deposition of George Fleming, we cannot say *as a matter of law* that the injured party Jeffrey Fleming, is residing in the same household as the insured. It must be remembered that the insurer has the burden of proving that the exclusion is applicable as well as the burden of showing that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law. In short, the insurer has not met the latter burden.

■ On motion for summary judgment, summary judgment is not appropriate unless it appears that the non-moving party could not prevail under any set of conceivable circumstances. Folmar v. Montgomery Fair, Inc., 293 Ala. 686, 309 So.2d 818, [M.S. February 13, 1975]. The facts adduced from the deposition of George Fleming do not compel this conclusion.

Accordingly, the judgment of the trial court is reversed and the cause remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.

HEFLIN, C. J., and FAULKNER, ALMON and EMBRY, JJ., concur.