## 58571. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY v. GAZAWAY et al.

McMurray, Presiding Judge.

This case involves a wrongful death action wherein the plaintiffs' decedent, Mrs. Cecelia Catherine Stoker, the wife of plaintiff Roy Allen Stoker and the mother of the other plaintiffs, was killed as a result of the collision of three automobiles. As alleged in the petition, two other automobiles collided, causing one of the vehicles to strike an automobile allegedly owned and operated by the plaintiffs' decedent. The action was served on the resident defendant; and second originals were served on two non-resident defendants and upon State Farm Mutual Automobile Insurance Company and Progressive Casualty Insurance Company.

In addition to the answers of the defendants, State Farm Mutual Automobile Insurance Company filed an answer with defenses of failure to state a claim upon which relief can be granted and other defenses implying the uninsured motorist coverage by it to plaintiff Roy Allen Stoker would not apply in this case. It contends that the plaintiff Roy Allen Stoker was not entitled to any relief in that the decedent, his wife, was not a resident of the same household as this plaintiff; hence she was not insured under the policy of insurance issued by the insurer to plaintiff Roy Allen Stoker, and since she must be a resident of the same household of a named insured (in this case plaintiff Roy Allen Stoker) at the time of the incident in question it should be dismissed without cost as

to it.

The Progressive Casualty Insurance Company answered contending that it had provided no uninsured motorist coverage whatsoever in regard to the incident in question in which the plaintiffs' decedent was killed, hence it should be discharged as a party without any interest in this action.

After considerable discovery, in which there is some evidence that other insurance companies may be involved as insurers, State Farm Mutual Automobile Insurance Company moved for summary judgment. It contended there was no genuine issue as to any material fact with reference to it as an insurer with uninsured motorist coverage to plaintiff Roy Allen Stoker, and it was entitled to judgment as a matter of law in its favor as to all issues of liability inasmuch as the plaintiffs' decedent was not, as a matter of law, a named insured or "other insured" in Roy Allen Stoker's policies of insurance. Its claim is that the decedent was not a resident of the named insured's household at the time of her fatal accident.

After a hearing and after consideration of the argument of counsel, the pleadings and "discovery of the case," the trial court was of the opinion that a genuine issue as to material facts remained to be resolved by a jury, that is, as to whether plaintiffs' decedent "was a resident of the same household as the named insured, Roy Allen Stoker," at the time of the automobile collision in which she was killed.

By order of this court, upon application for an interlocutory appeal, State Farm Mutual Automobile Insurance Company was allowed to file a notice of appeal. *Held:*

The insurer contends *from the uncontradicted facts* that the decedent was not a resident of her husband's household at the time of the collision, based, more or less, upon the decision of *Cotton States Mut. Ins. Co. v. McEachern,* 135 Ga. App. 628 (218 SE2d 645). The uncontested facts appear to be that while husband and wife were married at the time that she was killed they were residing apart in separate trailers and had been for about seven years. However, they were *never divorced,* were not *legally separated,* and neither of these legal

conditions were under any consideration. The separate mobile homes were approximately 15 miles apart. Their children stayed with the mother during the week and would stay with the husband almost every weekend. The trailer where the wife lived *was titled in the name of the husband,* he having financed the trailer and helped the wife to make payments on it, *providing her $60 per week for her own support and for the support of their children.* Often the utility bills and telephone bills for Mrs. Stoker's trailer would come to him in the mail, as well as doctor and hospital bills for the children which he always paid. *They filed joint income tax returns together each year. Mr. Stoker's hospitalization insurance listed Mrs. Stoker as his wife.* When he was asked the question as to whether or not he considered his residence to be at his trailer and his wife's trailer to be her home, his answer was: "Well, I considered both of them her home or mine, either one. I didn't look at it like that. I figured anything I had was theirs."

We are not concerned here at this time with whether or not other insurers are involved which would relieve State Farm from liability. Here State Farm admits it has in existence two policies containing uninsured motorist coverage, although the policies do not appear in the record. However, the policies would be controlled by Code Ann. § 56-407.1, as amended (Ga. L. 1963, p. 588; 1964, p. 306; 1967, pp. 463, 464; 1968, pp. 1089, 1091; 1968, pp. 1415, 1416; 1971, pp. 926, 927; 1972, pp. 882, 883; 1973, p. 487; 1975, p. 1221; 1976, pp. 1195, 1196; 1978, pp. 1895, 1896, eff. July 1, 1978, and applicable with respect to motor vehicle liability insurance policies issued or delivered in this state on or after January 1, 1979). Therein, the term "insured" includes the spouse of a named insured (plaintiff admitted here to be the named insured) *"while resident of the same household."* (Emphasis supplied.) Consequently, we have for determination the meaning of the word "resident" and the words "same household." A number of decisions have interpreted language in policies "residing in the same household as the insured." Thus the language is the same, although the same words are not used.

It has long been held by the numerous decisions of our appellate courts that the questions of domicile and

residence are mixed questions of law and fact and are ordinarily one for a jury to determine. See in this connection *Campbell v. Campbell,* 231 Ga. 214, 215 (1) (200 SE2d 899) and the various cases cited therein; *Patterson v. Patterson,* 208 Ga. 7, 13 (64 SE2d 441); *Williams v. Williams,* 226 Ga. 734 (2), 736 (177 SE2d 481). Of course, residence and domicile are not synonymous and convertible terms, although one's domicile would be one's residence. "A man may have several residences, but only one place of domicile." *Avery v. Bower,* 170 Ga. 202, 204 (1) (152 SE 239).

We also have for consideration here the doctrine of continuity. That is: a state of things once existing is presumed to continue until a change or some adequate cause of change appears, or until a presumption of change arises out of the nature of the subject. *Bass v. Bass,* 222 Ga. 378, 381-382 (149 SE2d 818). Here there were two residences but only one domicile. While it is possible that the recent case of Orr v. Orr, — U. S. — (99 SC 1102, 59 LE2d 306) may in many unknown degrees change our domestic relations law in this state, nevertheless this court is bound by Code Ann. § 53-501 which has been the law of this state since 1855, which reads as follows: "The husband is the head of the family and the wife is subject to him; her legal civil existence is merged in the husband, except so far as the law recognizes her separately, either for her own protection, or for her benefit . . ." They became a family unit upon marriage which would remain until dissolved.

The issue, therefore, is not whether plaintiff husband's decedent had a right to set up a separate household nor even whether she did set up a separate household, but for the jury to determine under various facts of this case whether she had set up her own household or was still a part of her husband's household. Under the facts here it was for the jury to determine the intention of the parties. From plaintiff's testimony it is clear that his family was still intact even though there was definitely evidence of marital discord. There was an establishment of at least two residences although there had been no steps taken to end the legal relationship of marriage. Under all the facts and circumstances the

family was still intact inasmuch as the husband was still supporting his wife and children to the best of his ability. They filed joint tax returns every year, and the husband plaintiff continued to name the decedent as beneficiary of his health insurance policies. They likewise continued to receive bills at both places. "As between husband and wife and their minor children a separation caused by a marital rift — as a result of which the wife and children temporarily reside apart from the husband — does not remove the wife and children from the household of the husband." *Varnadoe v. State Farm &c. Ins. Co.*, 112 Ga. App. 366 (145 SE2d 104).

It is quite clear that in the *Varnadoe* case the shoe was on the other foot, so to speak, inasmuch as State Farm was maintaining that the husband and wife were still family and the marriage was not dissolved, the separation a temporary one, and "[t]he duty to fully support the wife and minor children continued to exist during such period, . . . of separation." We find at page 369 of the *Varnadoe* case the following quotation from *Pace v. Pace*, 154 Ga. 712 (2) (115 SE 65) as follows: "In this State the husband is the head of the family, and as such has the right to fix the matrimonial residence without the consent of the wife; and the wife is bound to follow her husband, when he changes his residence, . . ."

It is true that in *Keene v. State Farm &c. Ins. Co.*, 114 Ga. App. 625 (152 SE2d 577) a definition of household as "a family living together" and family as "a collective body of persons who live in one house or within the same curtilage and under one head or management," as taken from a popular law dictionary was applied, but a household has also been defined as "a domestic establishment under single management." See *State Farm &c. Ins. Co. v. Snyder*, 122 Ga. App. 584 (178 SE2d 215). That case holds at page 586 that the result should arise from "a conclusion based on the aggregate details of the living arrangements of the parties." Also, "[t]he critical distinction when a relative of the insured is injured should therefore be whether separate domestic establishments are maintained . . . [but] '[a] common roof is not the controlling element.' 12 Couch on Insurance 2d, 495, § 45.520." This rule looks to the financial entanglements which would

exist within a household but which also would not exist between a household and individuals no matter how closely related.

In this case, Mrs. Stoker maintained a home for the unemancipated children of her marriage to Mr. Stoker. Mr. Stoker purchased the trailer in which Mrs. Stoker lived, provided her financial assistance by helping her when she was in a bind, paying utility bills and participating in the support of the wife and children. It appears certain that Mrs. Stoker's death results in a heavier burden upon Mr. Stoker as he is left with exclusive responsibility for the children. It is apparent from the evidence that if Mrs. Stoker's injuries had not resulted in her death that she would have looked to Mr. Stoker for assistance on the basis of his prior assistance and expected him to provide for her during any disability. Mr. and Mrs. Stoker and their children were clearly united as a single domestic establishment under a single management and therefore a single household as defined by *State Farm &c. Ins. Co. v. Snyder,* 122 Ga. App. 584, supra. In this time of mobility and diversified lifestyle the definition of household as established in the *Snyder* case is a more accurate reflection of the intent of the legislature.

Construing the evidence most strongly in favor of the party opposing the motion for summary judgment as we must do (see *Holland v. Sanfax Corp.,* 106 Ga. App. 1 (1), 4-5 (126 SE2d 442)), issues of material fact remain for jury determination as to whether or not plaintiff's decedent was an insured under the meaning of that term at the time of the collision in which she was killed, that is, was she a "resident of the same household" at that time. The trial court did not err in denying the motion for summary judgment.

*Judgment affirmed. Deen, C. J., Quillian, P. J., Smith and Carley, JJ., concur. Shulman, Banke, Birdsong and Underwood, JJ., dissent.*

ARGUED SEPTEMBER 26, 1979 — DECIDED
DECEMBER 5, 1979 —

*John F. Daugherty, Michael L. Wetzel,* for appellant.
*Joseph R. Cullens, Arnold Wright, J. Fred Ivester, Robert H. Cleveland, John O. Moore,* for appellees.

BANKE, Judge, dissenting.

It is undisputed that although Roy and Catherine Stoker were married at the time the collision occurred they had been residing apart in separate trailers for about seven years. Roy had secured the financing for Catherine's trailer, which was mortgaged in his name, though he considered it hers. He would help out with payments if she needed such help, and he also provided her $60 per week for her own support and for the support of their three children. Roy had not spent a night in Catherine's trailer in the seven years they had been separated; and, to the best of his knowledge, she had not spent a night in his trailer. He had, on occasion, taken Catherine and the kids out for a meal. Catherine went out with other men. The children regularly spent the weekdays with Catherine and weekends with Roy.

State Farm's liability and obligation to defend depend upon whether Catherine is an "insured" within the meaning of the policy which defines insured in pertinent part as "the first person named in the declarations, *and while residents of his household,* his spouse and the relatives of either." (Emphasis supplied.)

It is clear from the uncontested facts set forth above that Catherine Stoker was not a resident of Roy Stoker's household at the time of the collision. Accord, *Cotton States Mut. Ins. Co. v. McEachern,* 135 Ga. App. 628 (218 SE2d 645) (1975). Appellee's reliance upon this court's decision in *Varnadoe v. State Farm &c. Ins. Co.,* 112 Ga. App. 366 (145 SE2d 104) (1965), is misplaced. In that case the husband and wife, although experiencing marital difficulty and sleeping in separate rooms, were living in the same house. "The critical distinction . . . should therefore be whether separate domestic establishments are maintained." *State Farm &c. Ins. Co. v. Snyder,* 122 Ga. App. 584, 586 (178 SE2d 215) (1970). It is apparent in this case that separate households were maintained. It follows that appellant's motion for summary judgment should have been granted.

I respectfully dissent.

I am authorized to state that Judge Shulman, Judge Birdsong and Judge Underwood join in this dissent.