DECIDED MAY 12, 2006.

*David D. Rawlins*, for appellant.
*Mark D. Oldenburg*, for appellees.

A06A0509. SOUTHERN GENERAL INSURANCE COMPANY
v. FOY.
(631 SE2d 419)

RUFFIN, Chief Judge.

Doris Foy sued Southern General Insurance Company ("Southern General") for breach of an insurance contract, bad faith refusal to settle an insurance claim, and punitive damages. The parties subsequently filed cross-motions for summary judgment on the issue of insurance coverage. The trial court granted summary judgment to Foy and denied Southern General's motion. Southern General appeals both rulings. Finding no error, we affirm.

Summary judgment is appropriate when no genuine issues of material fact remain and the movant is entitled to judgment as a matter of law.[1] In this case, the record shows that Foy and her adult son, Kevin, drove to Florida on August 31, 2003. Although they initially intended to take Kevin's car, its air conditioner was broken, so they traveled instead in Foy's car, with Kevin driving. As Kevin drove through Jacksonville, he collided with another car, and Foy was injured. At the time, Kevin had an automotive insurance policy through Southern General.

Foy subsequently sued Kevin for damages she sustained in the collision. Kevin failed to answer, and a default judgment was entered against him in the amount of $250,000. After Kevin assigned to Foy his rights against Southern General, Foy commenced this action, asserting that Southern General failed to settle the claim in good faith and breached the insurance contract by refusing to defend Kevin in the underlying suit.

In response, Southern General denied that Kevin's policy covers Foy's injuries. The policy obligates Southern General to "pay, on behalf of an insured person, damages for which any insured person is legally liable because of bodily injury and property damage arising out of an accident involving your insured car, or a non-owned car." The term "you" or "your" refers to Kevin. And "insured person" includes

---

[1] See OCGA § 9-11-56 (c).

Kevin while driving his own insured car or "while driving a non-owned car with permission." Under the policy, a "non-owned car" means, inter alia, "a car or utility car other than your insured car which is not owned by, or furnished or available for regular or frequent use by you or a resident of your household."

Noting that Kevin lives with Foy, Southern General asserted that the two were residents of the same household at the time of the collision. According to Southern General, therefore, Foy's car was not a "non-owned car" under the policy, and neither the car nor the collision fell within the policy's coverage provisions. Foy, on the other hand, argued that her car is a "non-owned" car, bringing it within the policy. She asserted that although she and Kevin live under the same roof, they do not reside in the same "household."

To support this argument, Foy submitted affidavits prepared by herself and Kevin. Foy testified that, in 2000, she allowed her son "to move into and occupy a room of [her] house." Kevin pays rent and is responsible for maintaining his portion of the house, purchasing and preparing his own food, and doing his own laundry. He does not use Foy's automobile on a regular or frequent basis and had never driven it prior to the collision. Moreover, although Kevin may use the kitchen, he lives in a separate part of the house.

Kevin similarly asserted that his mother does not cook, clean, or do laundry for him. According to Kevin, he and his mother do not regularly "share any common areas in the house," and he has his own television. He is employed, owns an automobile, has insurance for it, and "come[s] and go[es] as [he] please[s]." Kevin further testified: "Both my mother and I lead our separate lives and there is no domestic establishment under single management."

Rejecting Southern General's claim that the policy does not extend to Foy, the trial court granted Foy summary judgment on the issue of coverage. We find no error.

Although "[q]uestions of domicile and residence are mixed questions of law and fact [that] are ordinarily for a jury to determine,"[2] no genuine issue of material fact remains here. In determining whether Foy is a resident of Kevin's household, "a common roof is not the controlling element."[3] Rather,

---

[2] *Burdick v. Govt. Employees Ins. Co.*, 277 Ga. App. 391, 392 (1) (626 SE2d 587) (2006).

[3] (Punctuation omitted.) *State Farm &c. Ins. Co. v. Gazaway*, 152 Ga. App. 716, 720 (263 SE2d 693) (1979).

the aggregate details of the family's living arrangements must be considered. Of critical importance to such an analysis is whether the family members have established and maintained separate households under different managements.[4]

In this case, Foy presented evidence that she and Kevin are responsible for separate parts of the house, live in different areas, do not cook or clean for each other, and come and go independently. Undoubtedly, they live under the same roof. But Southern General has pointed to no evidence that their activities or living arrangement constitute — in any way — "a 'domestic establishment under single management.' "[5]

Southern General claims on appeal that Foy and her son have conceded that they belong to the same household. At deposition, both testified that Kevin lives *with* Foy. But we cannot find that such testimony raises a question of fact here. Again, under Georgia law, a "household" does not result simply because people reside in the same house.[6]

Southern General also asserts that, in recorded statements taken by a claims adjuster before this lawsuit commenced, Foy and Kevin answered affirmatively when asked whether they lived in the same "household." As noted above, however, any effort to define the members of a household involves a mixed question of law and fact.[7] These pre-suit responses to the claims adjuster's question, therefore, do not constitute a binding admission.[8] And given the significant, uncontroverted evidence regarding Foy and Kevin's separate living arrangements, no factfinder could conclude that the two maintained a single household under the same management.[9]

Southern General has offered no evidence to counter Foy's proof that she and her son maintained distinct households under different management. Instead, it has persisted in its mistaken assertion

---

[4] (Punctuation omitted.) *Burdick*, supra.

[5] *Gazaway*, supra.

[6] See id.

[7] See *Burdick*, supra.

[8] See *Anthem Cas. Ins. Co. v. Murray*, 246 Ga. App. 778, 780-781 (1), n. 10 (542 SE2d 171) (2000) (a party's admission as to a question of law and fact is not binding on the party).

[9] Compare *Burdick*, supra (question of fact remained as to whether adult daughter resided in parent's household or maintained separate household in parent's house where evidence showed that the family often ate meals together and daughter paid for the household's cable television, as well as cell telephone plan that she shared with her father); *Teems v. State Farm &c. Ins. Co.*, 113 Ga. App. 53, 54 (147 SE2d 20) (1966) (although adult daughter paid rent to live in parent's home, bought her own clothes, paid for her own telephone extension, and paid for her medical bills and expenses, court found that she resided in the same "household" with parents given evidence that she continued to have use of the house and "the family relationship" was the same as it was before she began working and paying her own expenses).

that Foy and her son are members of the same household merely because they share a roof. Perhaps Southern General could have developed the record further and created a factual question in this case, but it failed to do so.[10] Accordingly, the trial court properly denied Southern General's motion for summary judgment and granted Foy summary judgment on the issue of coverage.

*Judgment affirmed. Smith, P. J., and Phipps, J., concur.*

DECIDED MAY 12, 2006 — 

*Jenkins & Olson, Frank E. Jenkins III, Brandon L. Bowen, Jennifer J. Walker*, for appellant.

*O. Wayne Ellerbee, William A. Turner, Jr.*, for appellee.

---

[10] For example, Southern General could have questioned Foy and her son during their depositions about the details of their living arrangement. The record shows, however, that Southern General's questions merely established that Kevin lives with Foy.