474 So.2d 348 (1985)
A.W. ROW, III, As Personal Representative of the Estate of Mark Alexander Row, Appellants,
v.
UNITED SERVICES AUTOMOBILE ASSOCIATION, Appellee.
No. AZ-305.
District Court of Appeal of Florida, First District.
August 7, 1985.
Rehearing Denied September 11, 1985.
Michael W. Jones, of Baxley & Jones, Gainesville, for appellants.
Toby S. Monaco, of Dell, Graham, Willcox, Barber, Henderson, Monaco & Cates, Gainesville, for appellee.
ZEHMER, Judge.
The issue on appeal from the declaratory judgment in favor of United Services Automobile *349 Association (USAA) is whether the trial court erred by defining the USAA policy term "resident of your household" to exclude the insured's son, Mark Alexander Row, who was killed as the result of a hit-and-run accident on March 20, 1983, thereby precluding the decedent's estate from recovering uninsured motorists benefits under the father's automobile insurance policy. We reverse.
The subject insurance policy with USAA extends uninsured motorists benefits to a person injured by a hit-and-run driver, provided the injured person is one of the named insured's family members. The relevant contractual provision extending coverage to such person states:
"[F]amily member" means a person related to you by blood, marriage or adoption who is a resident of your household. This includes a ward or foster child.
(R. 33). Mark Row was neither a named insured nor a listed operator of his father's vehicle and could qualify for policy benefits as an insured only by reason of his blood relationship and as a resident of his father's household. Appellant's principal contention is that the trial court's construction of the quoted policy clause, as applied in this case, was too restrictive and, thus, reversible error. The clause defines persons to whom coverage is extended, as opposed to persons excluded from coverage, and is considered an inclusionary clause. We must, therefore, construe "resident of your household" as liberally as those words may reasonably permit in common usage, so as to give effect to the intentions of the parties and purposes of the insurance. United States Fidelity & Guaranty Co. v. Williams, 375 So.2d 328 (Fla. 1st DCA 1979); Inter-Ocean Casualty Co. v. Hunt, 138 Fla. 167, 189 So. 240 (1939).[1]
It is settled in this state that what constitutes residency in a household is a mixed question of law and fact to be determined from the facts of each individual case. General Guaranty Insurance Co. v. Broxsie, 239 So.2d 595, 597 (Fla. 1st DCA 1970) (quoting Kiplinger v. Kiplinger, 147 Fla. 243, 2 So.2d 870, 873-874 (1941)):
"The residence of a party consists of fact and intention. Warren v. Warren, 73 Fla. 764, 75 So. 35, L.R.A. 1917 E, 490. Residence indicates a place of abode, whether permanent or temporary. Minick v. Minick, 111 Fla. 469, 149 So. 483. A resident is one who lives at a place with no present intention of removing therefrom. Tracy v. Tracy, 62 N.J. Eq. 807, 48 A. 533. Whether or not a party is a resident is a question of law and fact to be settled or determined from the facts of each particular case.'
When the facts are essentially undisputed, however, whether those facts fit within the policy definition is a question of law that may be decided on appellate review. American Security Insurance Co. v. Van Hoose, 416 So.2d 1273 (Fla. 5th DCA 1982); State Farm Mutual Automobile Insurance Co. v. Phillips, 2 Wash. App. 169, 467 P.2d 189 (1970).
In General Guaranty Insurance Co. v. Broxsie, the court noted three material aspects of a household: (1) close ties of kinship, (2) a fixed dwelling unit, and (3) enjoyment of all the living facilities. As the court in Broxsie commented, the main thread of a family household is the sharing of companionship and living facilities in a dwelling unit by members of a household. Although this definition of household might seem to require living together in a single dwelling, it has been recognized that the policy term "household" may also be defined to include one who is not, at the time of an accident, physically living within *350 the same structure as the named insured. E.g., Sanders v. Wausau Underwriters Insurance Co., 392 So.2d 343 (Fla. 5th DCA 1981); United States Fidelity & Guaranty Co. v. Williams, 375 So.2d 328 (Fla. 1st DCA 1979), cert. denied, 386 So.2d 642 (Fla. 1980); State Farm Mutual Auto Insurance Co. v. Elkins, 52 Cal. App.3d 534, 125 Cal. Rptr. 139 (1975); Miller v. United States Fidelity & Guaranty Co., 127 N.J. Super. 37, 316 A.2d 51 (1974); Travelers Insurance Co. v. Mixon, 118 Ga. App. 31, 162 S.E.2d 830 (1968). Although in these cases a family member was temporarily absent from the insured's residence and the critical question involved was intent by the absentee to return to the residence of the named insured, these decisions support construction of the quoted policy language to exclude an absolute requirement of physical residence in a single structure in order to be a resident in the insured's household.
The facts in this case are essentially undisputed. At the time of his death in 1983, Mark Row lived in one of a series of twelve one-bedroom apartments comprising three quadra-plexes located on one parcel of land, referred to in the testimony as the "Row Children Apartments." The apartments were among several properties owned by A.W. Row and his wife before their divorce. Mr. Row received the apartments as part of the property settlement, while Mrs. Row retained the marital home. The marital home had several bedrooms, and prior to the divorce several of the children were permitted to live at home after reaching adulthood.
Mr. Row moved into one of the apartments in 1978. By late 1978, Mark had moved in with his father, but began experiencing signs of mental illness. During the next three years Mark was jailed for a short time, hospitalized, and transferred to several institutions for treatment of his mental illness. Between his stays in treating facilities, or while on leave therefrom, Mark routinely returned to his father's apartment to live. Mr. Row assumed responsibility for hospitalization costs, and Mark was discharged to Mr. Row's care in 1981. In late 1981 Mark left his father briefly to look for work in Louisiana, but returned two months later to his father's apartment. By that time, however, the father had obtained custody of Mark's two younger brothers and they had moved into Mr. Row's apartment. Mark's sister was living in another of the apartments. There was no vacant apartment available for Mark, so he lived elsewhere until the first vacancy became available five months later, when he moved back into the family apartment complex. Each child, including Mark, had a master key to the family apartments, into which they came and went as they pleased. They paid no rent or security deposit and signed no lease. All the children, including Mark, performed maintenance and upkeep around the complex for which they received money, but this was not considered salary. Mark maintained no utility service in his apartment. He used his father's apartment for socializing, eating and cooking, using the telephone, doing laundry, and bathing. Mark had no automobile and no regular job, and the longest time Mark was continuously employed was approximately a week and a half. Mr. Row and his children considered the complex the family home.
The record indicates that Mark suffered continued mental disturbances. After returning from Louisiana and moving into the "Row Children Apartments," Mark had a female roommate for six months. She was a nursing school graduate and testified that Mark was dependent upon his father emotionally and that "because of his illness ... I don't think he was able to get away and go off and do things on his own for a longer period of time" (R. 45). When asked whether, during the time she and Mark lived together, Mark and the other members of the Row family acted as a family unit, the roommate responded affirmatively, but qualified her answer by saying that "when Mark was coherent and not having his schizophrenic episodes he would go up and they would joke around and talk about their cars and the whole thing seemed to function well, but when he was having a schizophrenic episode he *351 would cause problems for the family" (R. 47). During the time she shared the apartment with Mark, she never signed a lease, gave a security deposit, or paid any rent, and Mr. Row would leave the door open to the primary family apartment so that she could come in and use it whenever she needed. During the time she and Mark shared the apartment, she gave Mark no financial support, but maintained utilities and telephone service (which were disconnected when she left) in her own name. Mark's expenses exceeded his income, she testified, and Mr. Row provided him money, "usually ... in return for some kind of work that he had done around the complex" (R. 44).
These facts fall well within the broad definition that must be given the term "household." At the time of Mark's accidental death, he enjoyed close ties of kinship with the other members of the family, lived in a fixed dwelling unit complex with them, and enjoyed the use of each part of the living facilities, including his father's apartment. In short, the undisputed evidence establishes the sharing of companionship and living facilities of the dwelling unit essential to the concept of a family household. The fact that Mark was physically staying in a separate apartment from his father is, under the unique circumstances shown here, of no legal consequence.
USAA argues that these facts are not sufficient to establish residency in a household, relying primarily on American Security Insurance Co. v. Van Hoose, 416 So.2d 1273.
In Van Hoose, an adult daughter had married and moved out of state, then later returned with her two small children to live in a rental house across the street from her father's house. The fully-equipped house was rented, and the utilities maintained, in the daughter's name. Although the daughter relied upon her father for some of her support, including utility and rent payments, as well as food expenses, she also held a job as a nurse's aide and received monthly government payments in her name for child support. The father listed one of the grandchildren as an exemption on his federal income tax return. The appellate court reversed the trial court judgment, holding that since the evidence failed to establish the daughter's intent to return home after her prolonged absence and live in a single household with her father, the policy term "resident of the insured's household" should not be construed as including the daughter. The court commented in part:
Here, the daughter gave sufficient indicia of having a separate household, such as putting the electric [utilities] in her name, having the lease for the original house in her name, and putting that address down for job applications and on federal income tax forms. Additionally, appellee did pay some of the bills when she was able to. This is not an instance such as Mazzilli,[2] where the relationship merely continued as it had but in a different building. Here the appellee went away for many years and was married before deciding to return to be near her parents in Florida, so no relationship can be said to have continued.
416 So.2d at 1276. See also Sanders v. Wausau Underwriters Insurance Co., 392 So.2d 343 (Fla. 5th DCA 1981).
Unlike Van Hoose and Sanders, we are not here concerned with a long prior absence and the need to prove an intent to return to reestablish residence in the father's household. Mark's futile attempt to leave home and work in Louisiana lasted no more than two months. All the evidence points to the conclusion that Mr. Row continued to be responsible for Mark both financially and emotionally and to provide support normally accorded a dependent member of his household. Unquestionably, if the deceased son had been living under the same roof with his father, under the circumstances shown by this record, he would be a member of the household for purposes of this insurance policy clause. Government Employees Insurance Co. v. *352 Dennis, 645 P.2d 672 (Utah 1982); Automobile Club Inter-Insurance Exchange v. Tonkins, 509 S.W.2d 802 (Mo. App. 1974). The fact that Mark did not physically reside within the same apartment as his father does not preclude his being a resident of his father's household. The record contains no evidence to support a conclusion that Mark either intended to maintain or was financially and emotionally capable of maintaining his own household separate and apart from that of his father.
The order below is reversed and the cause remanded for entry of judgment consistent with this opinion.
REVERSED and REMANDED.
SHIVERS, J., concur.
BOOTH, C.J., dissents.
BOOTH, Chief Judge, dissenting.
I respectfully dissent. The trial court, sitting as the finder of fact, has determined that, considering all the factual circumstances and inferences arising therefrom, Mark Alexander Row was not a member of the household of the insured at the time of his death. A contrary interpretation of the same facts is possible, as illustrated by the careful opinion of the majority; however, the judgment below is supported by the record and should be affirmed.
NOTES
[1] It should be noted that:

The point has also been made that since the terms are to be construed so as to favor coverage, the cases which have focused upon those terms in the context of policy clauses excluding liability coverage of an individual found to be a `resident' of the named insured's `household' are of little value as precedents in applying clauses extending coverage to those to whom the terms apply.
Annot., 93 A.L.R.3d 420, 427 (1979).
[2] Mazzilli v. Accident & Casualty Insurance Co., 35 N.J. 1, 170 A.2d 800 (1961).