**Alfredo TIRONA, Plaintiff,**

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, an Illinois corporation, Defendant.**

**Civ. No. 92–00347 BMK.**

United States District Court, D. Hawaii.

Feb. 16, 1993.

Richard M. Berger, Paul M. Dold, Law Offices of Erlinda Dominguez, Honolulu, HI, for plaintiff.

Darolyn Hatsuko Lendio, McCorriston Miho & Miller, Honolulu, HI, for defendant.

## ORDER GRANTING DEFENDANT STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF ALFREDO TIRONA'S MOTION FOR SUMMARY

KURREN, United States Magistrate Judge.

The case came on for hearing on Defendant State Farm Mutual Automobile Insurance Company's Motion for Summary Judgment and Plaintiff Alfredo Tirona's Motion for Summary Judgment. Darolyn Hatsuko Lendio appeared on behalf of Defendant State Farm Mutual Automobile Insurance Company ("State Farm"), Richard M. Berger and Paul M. Dold appeared on behalf of Plaintiff Alfredo Tirona ("Plaintiff"). The court, having reviewed the motion and the memoranda in support thereof and in opposition thereto, having heard the oral arguments of counsel, and being fully advised as to the premises herein, finds as follows:

### BACKGROUND

This action for declaratory relief concerns claims which have been or may be asserted for no-fault benefits and underinsured motorist ("UIM") benefits by Plaintiff. The claims brought by Plaintiff arise out of an automobile accident that occurred on July 30, 1989. On that date, a Ford Clubwagon van, rented from Budget Rent-A-Car in Reno, Nevada and driven by Teodoro Dacanay, veered off Highway 395 toward Yosemite National Park, hit an embankment and flipped over, injuring passengers Alfredo Tirona, Salome Tirona, Arceli Dacanay, Sofia Candelario and Christine Dacanay.

Plaintiff and other passengers in the van made claims against the driver of the van. Budget Rent-A-Car and State Farm of California paid the total limits of their coverages ($60,000) to the injured persons, including Plaintiff.

Plaintiff seeks in this action a declaration that he is entitled to benefits under an insurance policy issued by State Farm to Sofia Candelario ("the policy") for one automobile, a 1978 Ford Fairmont which Candelario purchased and kept in Hawaii. The policy provides for $15,000 in no-fault benefits and $35,000 in UIM benefits.

State Farm argues that no coverage is available to Plaintiff under the policy because Plaintiff is not an "insured" under the policy. Since Plaintiff is not a "named insured" under the policy, he can only qualify as an "insured" if he is married to or a relative of Sofia Candelario and lives in the same household with her. State Farm contends that Plaintiff did not live in the same household with Candelario on the date of the accident.

Plaintiff argues that he is an "insured" under the policy because he is married to Sofia Candelario and, on the date of the accident, did "temporarily reside elsewhere". Plaintiff contends that the language of the policy and the Hawaii No-Fault Law should be read broadly to afford him no-fault and UIM benefits for injuries sustained in the accident.

### SUMMARY JUDGMENT STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered when:

> ... the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show

that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law.

The moving party has the initial burden of "identifying for the court those portions of the materials on file in the case that it believes demonstrate the absence of any genuine issue of material fact." *T.W. Electrical Service, Inc. v. Pacific Electrical Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir.1987), *Citing Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The movant must be able to show "the absence of a material and triable issue of fact," *Richards v. Neilsen Freight Lines,* 810 F.2d 898, 902 (9th Cir.1987), although it need not necessarily advance affidavits or similar material to negate the existence of an issue on which the non-moving party will bear the burden of proof at trial. *Cal. Arch. Bldg. Prod. v. Franciscan Ceramics,* 818 F.2d 1466, 1468 (9th Cir.1987). *See Celotex,* 477 U.S. at 323–25, 106 S.Ct. at 2553. *But cf. id.* at 327–29, 106 S.Ct. at 2555–56 (White, J. concurring).

■ If the moving party meets its burden, then the opposing party may not defeat a motion for summary judgment in the absence of any significant probative evidence tending to support his legal theory. *Commodity Futures Trading Comm'n v. Savage,* 611 F.2d 270, 282 (9th Cir.1979). The opposing party cannot stand on his pleadings, nor can he simply assert that he will be able to discredit the movant's evidence at trial. *See T.W. Electrical,* 809 F.2d at 630. Similarly, legal memoranda and oral argument are not evidence and do not create issues of fact capable of defeating an otherwise valid motion for summary judgment. *British Airways Bd. v. Boeing Co.,* 585 F.2d 946, 952 (9th Cir.1978), *cert. denied,* 440 U.S. 981, 99 S.Ct. 1790, 60 L.Ed.2d 241 (1979). Moreover, "if the factual context makes the non-moving party's claim *implausible,* that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial." *Franciscan Ceramics,* 818 F.2d at 1468, *citing Matsushita Electric Industrial Co.,*

*Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

The standard for a grant of summary judgment reflects the standard governing the grant of a directed verdict. *See Eisenberg v. Insurance Co. of North America,* 815 F.2d 1285, 1289 (9th Cir.1987) *citing Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–53, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). Thus, the question is whether "reasonable minds could differ as to the import of the evidence." *Id.*

■ However, when "direct evidence" produced by the moving party conflicts with "direct evidence" produced by the party opposing summary judgment, "the judge must assume the truth of the evidence set forth by the non-moving party with respect to that fact." *T.W. Electrical,* 809 F.2d at 631. Also, inferences from the facts must be drawn in the light most favorable to the non-moving party. *Id.* Inferences may be drawn both from underlying facts that are not in dispute, as well as from disputed facts which the judge is required to resolve in favor of the non-moving party. *Id.*

## LAW TO APPLY

■ Plaintiff's complaint is based on diversity jurisdiction. 28 U.S.C. § 1332(a). In diversity cases, federal courts must look to the substantive law of the forum state. Thus, this court looks to the law of Hawaii to determine the issues raised by the present motions. In the absence of controlling state law, a "federal court sitting in diversity must use its own best judgment in predicting how the state's highest court would decide the case." *Takahashi v. Loomis Armored Car Service,* 625 F.2d 314, 316 (9th Cir.1980).

## DISCUSSION

### A. *Undisputed Facts*

Sofia Candelario is a resident of the City and County of Honolulu, State of Hawaii, and, on the date of the accident, lived at 94–229 Kahuanani Street in Waipahu, Hawaii.

Plaintiff is Candelario's husband and, on the date of the accident, lived at 499 Sierra Vista Drive, Apt. 28, in Las Vegas, Nevada.

The residential history of Plaintiff is illustrated in the following table which provides a detailed view of Plaintiff's various residences since he came to live in the United States.

1974—Moved from Philippines to Maryland and lived with brother, Manuel Tirona.

1975—Lived in Philadelphia, Pennsylvania and worked as a bus person at the Sheraton. Married Sofia Candelario, a registered nurse. Moved to Seattle, Washington and employed as a bus person at the Washington Athletic Club. Candelario moved to Honolulu, Hawaii and lived near School Street on Pohaku.

12/76—Moved to Las Vegas, Nevada and worked as a bus person at the Hacienda Hotel. Candelario remained in Hawaii.

1978—Moved to Reno, Nevada and worked at the MGM Hotel & Casino as a bus person and casino porter. Candelario remained in Hawaii.

1980—Moved to Las Vegas, Nevada and worked at the Sundance Hotel & Casino as a casino porter. Candelario remained in Hawaii.

12/82—Moved to Honolulu, lived with Candelario and worked at APCOA as a part-time parking attendant.

6/83—Moved to Reno, Nevada and was unemployed. Candelario remained in Hawaii.

3/84—Lived in Reno, Nevada and worked at the Eldorado Hotel & Casino as a casino porter. Candelario remained in Hawaii.

4/86—Moved to Hawaii and was unemployed.

12/86—Moved to Reno, Nevada then moved to Las Vegas, Nevada and worked at the Holiday Inn as a bus person. Candelario remained in the Hawaii.

7/30/89—Date of Accident. Plaintiff continued to live in Las Vegas until the date of his next accident. Candelario remained in Hawaii.

9/90—Date of an accident in which Plaintiff hit by truck in Las Vegas. Returned to Hawaii for recuperation and recovery.

4/91—Moved to Reno, Nevada and worked at Comstock Hotel & Casino as bus person.

11/92—Plans to return to Hawaii to live with Candelario.

Plaintiff paid federal income taxes in Nevada and his bank account was with the First Interstate Bank of Nevada in Las Vegas. Plaintiff did not purchase the Fairmont insured by State Farm nor is he listed as a registered owner on the Fairmont. He did not purchase or pay insurance on the Fairmont.

Additionally, with regard to the property owned by the couple in Waipahu, Candelario put the down payment on the house with her own money, pays the mortgage and property taxes with her wages, pays for all the utilities, food and other necessities needed to run the household, and, in the past 10 years, has received a small sum of money from Plaintiff on a handful of occasions because she had to have surgery and was unable to work.

Since the couple married in 1975 when they met in Philadelphia, Plaintiff has lived in Las Vegas and Reno and has only been with his wife in Hawaii for the following periods prior to the accident: December 1982 to June 1983 and April 1986 to December 1986. The couple has also spent annual vacations together. On the date of the accident, Plaintiff lived in Las Vegas and Candelario live in Waipahu, Hawaii.

B. *The Insurance Policy*

The policy, which State Farm has issued in Candelario's name, covered the Fairmont. The policy provides, in pertinent part:

**SECTION II—NO–FAULT—COVERAGE P ...**
**What We Pay**
We will pay the following benefits in accordance with the **No–Fault Act** for **bodily injury** to an **insured,** caused by accident resulting from the ownership,

operation, maintenance or use of a **motor vehicle** as a vehicle: ...

"Insured" is defined as the named insured or any "relative". The policy defines "relative" as follows: a "your spouse; anyone related to you by blood, marriage or adoption; and a minor in the custody of you, your spouse or such person related to you, resident in your household, even if temporarily residing elsewhere."

"Spouse" is defined as "your husband or wife while living with you."

With regard to Underinsured Motor Vehicle ("UIM") coverage, the policy provides:

**6895AK UNDERINSURED MOTOR VEHICLE—COVERAGE W**

This endorsement is part of **your** policy. Except for the changes it makes, all other terms of the policy remain the same and apply to this endorsement....

We will pay damages for **bodily injury** an **insured** is legally entitled to collect from the owner or driver of an **underinsured motor vehicle.** The **bodily injury** must be caused be an accident arising out of the operation, maintenance or use of an **underinsured motor vehicle**....

An "insured" under the pertinent UIM coverage is defined as the first person on the declarations, his or her spouse, or their relatives".

"Relative" under the insurance policy means "a person related to you or your spouse by blood, marriage or adoption who lives with" the named insured.

"Spouse" under the insurance policy means the named insured's "husband or wife while living with" the named insured.

### C. *The Applicable Statute*

Section 431:10C–103(11) of the Hawaii Revised Statutes defines "no-fault insured" as "a spouse or relative" of a named insured, "while residing in the same household with a named insured". The section further states:

A person resides in the same household if the person usually makes the person's home in the same family unit, even though the person temporarily lives elsewhere.

### D. *Analysis*

The sole issue for consideration is whether Plaintiff is an "insured" under the policy. In view of the undisputed facts, the language of the policy, and the language of the Hawaii No–Fault Law, this Court grants summary judgment in favor of State Farm and denies summary judgment sought by Plaintiff.

Preliminarily, this Court finds that the integration clause contained in the UIM section of the policy integrates and incorporates the Definitions section of the policy. Therefore, this Court finds that the definition of "spouse" in the Definitions section to apply to the UIM section of the policy.

Moreover, the language of the Hawaii No–Fault Law refines and defines the language of the policy and states:

A person resides in the same household if the person usually makes the person's home in the same family unit, even though the person temporarily lives elsewhere.

Haw.Rev.Stat. Section 431:10C–103(11).

Thus, the Hawaii Legislature intended to require Plaintiff to reside in the same family unit as his wife before he may be afforded coverage for no-fault and UIM benefits. The Hawaii Legislature did not intend, by the clear language of the statute, to delete this requirement or it would have proceeded to do so.

Thus, an insurance claimant must live in the same "household" as the named insured to qualify for coverage under the State Farm policy. *See, e.g., Keene v. State Farm Mut. Auto Ins. Co.,* 114 Ga. App. 625, 152 S.E.2d 577, 578 (Div. 2 1966) (defining household as a 'family living together' ...); *Drake v. Donegal Mut. Ins. Co.,* 422 F.Supp. 272, 273 (W.D.Pa.1976) (defining "household" as "those who dwell under the same roof and compose a family").

Courts analyze the totality of the living arrangements and household operation in determining whether a claimant "lives with" the named insured. Most courts have adopted the standard first set forth in

*Hoff v. Hoff,* 132 Pa.Super. 431, 1 A.2d 506, 508 (1938) when analyzing a claimant's residency:

> "[n]either [blood] relationship nor the presence of all the parties within one dwelling is the determining factor, but rather the existence of such domestic arrangements and circumstances as would create *separate domestic establishments,* each having its own head and *separate management."* (Emphasis added.)

That is, courts analyze the aggregate details of the parties' living arrangements when determining the claimant's "residency." No one factor controls. *See, e.g., Mun Quon Kok v. Pacific Insurance Co.,* 51 Haw. 470, 462 P.2d 909 (1969); *Workman v. Detroit Automobile Inter–Insurance Exchange,* 404 Mich. 477, 274 N.W.2d 373 (1979); *Davenport v. Aetna Casualty & Surety Company of Illinois,* 144 Ga. App. 474, 241 S.E.2d 593 (Div. 1 1978).

The *Hoff* Court found "separate domestic establishments" based upon the following elements: (1) separate control and furnishing of rooms (within same house); (2) separate family functions; (3) separate purchase and storage of groceries and other necessities; (4) separate use of utensils and household equipment; (5) separate payment of utilities; (6) separate household chores; (7) separate laundry equipment; (8) separate entrances; and (9) separate entertaining of guests. *Hoff v. Hoff, supra,* 1 A.2d at 507.[1]

The only Hawaii case interpreting this contractual language is *Mun Quon Kok v. Pacific Insurance Co.,* 51 Haw. 470, 462 P.2d 909 (1969), where the Court held that the claimant was not a resident of his son's household on the date of accident. In *Kok* the named insured took two meals per day to his father, who slept and kept his personal belongings in a rented room in a separate building. The son likewise re-

---

**1.** A variety of factors have been analyzed by state courts in determining a claimant's residency. The more significant include: (1) where the individual claiming residence regularly sleeps and eats; *Mun Quon Kok v. Pacific Insurance Co., supra; Drake v. Donegal Mutual Insurance Co.,* 422 F.Supp. 272, 273 (W.D.Pa.1976); (2) where personal belongings are stored; *Grange Mutual Casualty Co. v. Brinkley,* 182 Ga.App. 273, 355 S.E.2d 767, 768 (1987); *Mission Insurance Co. v. Ward,* 487 S.W.2d 449, 450 (Mo. 1972); (3) where the claimant socializes; *Donegal Mutual Insurance Co. v. State Farm,* 377 Pa.Super. 171, 546 A.2d 1212, 1215 (1988); *Row v. United Services Automobile Ass'n,* 474 So.2d 348, 350 (Fla.App. Dist. 1 1985); (4) flow of rent or other support between the parties; *Wolverine Insurance Co. v. Eldridge,* 326 F.2d 748, 750 (7th Cir.1964); (5) shared kitchen; *Hoff v. Hoff,* 132 Pa.Super. 431, 1 A.2d 506, 507 (1938); *Bryant v. Safeco Ins. Co.,* 143 Mich.App. 743, 372 N.W.2d 655, 657 (1985); (6) shared appliances and utensils; *State Farm Mutual Automobile Insurance Co. v. Snyder,* 122 Ga.App. 584, 178 S.E.2d 215, 216 (Div. 3 1970); *Hoff v. Hoff, supra,* 1 A.2d at 507; (7) freedom of access to all parts of household; *Row v. United Services Auto. Ass'n,* 474 So.2d 348, 350 (Fla.App. Dist. 1 1985); *Liprie v. Michigan Millers Mutual Insurance Co.,* 143 So.2d 597, 600 (La.App.1962); (8) shared bedrooms; *State Farm v. Snyder, supra,* 178 S.E.2d at 216; (9) shared living rooms; *Id.,* 178 S.E.2d at 216; (10) shared bathing facilities; *Ferrel v. Allstate Insurance Co.,* 106 Idaho 696, 682 P.2d 649, 650 (App.1984); *State Farm v. Snyder, supra,* 178 S.E.2d at 216; (11) shared entrances to household structures; *Bryant v. Safeco Insurance Co.,* 143 Mich.App. 743, 372 N.W.2d 655,

656 (1985); (12) permanent availability of own room in family household; *Crossett v. St. Louis Fire and Marine Insurance Co.,* 289 Ala. 598, 269 So.2d 869, 871 (1972); (13) physical separation of household structures; *Cotton States Mutual Insurance Company v. McEachern,* 135 Ga.App. 628, 218 S.E.2d 645, 647 (Div. 1 1975); (14) joint purchase of groceries and other necessities; *Drake v. Donegal Mutual Ins. Co.,* 422 F.Supp. 272, 273 (W.D.Pa.1976); *Hoff v. Hoff, supra,* 1 A.2d at 507; (15) shared payment of utilities; *American Security Insurance Company v. Van Hoose,* 416 So.2d 1273, 1274 (Fla.App. Dist. 5 1982); *Aetna Casualty and Surety Co. v. Means,* 255 F.Supp. 455, 457 (N.D.Okla.1966); (16) shared power sources; *Workman v. Detroit Automobile Inter–Insurance Exchange,* 404 Mich. 477, 274 N.W.2d 373, 379–380 (1979); (17) shared telephone service; *Row v. United Services Auto. Ass'n, supra,* at 350; (18) shared laundry facilities; *Donegal Mutual Ins. Co. v. State Farm, supra,* 546 A.2d at 1216; *State Farm v. Snyder, supra,* 178 S.E.2d at 216; (19) shared household chores; *American Security Insurance Co. v. Van Hoose, supra,* at 1274; (20) common television and radio; *Donegal Mutual Insurance Co. v. State Farm, supra,* 546 A.2d at 1215; *Ferrel v. Allstate Ins. Co., supra,* 682 P.2d at 650; *Hoff v. Hoff, supra,* 1 A.2d at 507; (21) separate ownership, registration and insurance of car; *Aetna Casualty and Surety, supra,* at 457; and (22) residence in household for a period subsequent to accident; *Hardware Mutual Casualty Co. v. Home Indemnity Co.,* 241 Cal.App.2d 303, 50 Cal.Rptr. 508, 513 (Dist. 1 1966).

ceived his father's mail and delivered it to his father's room. In analyzing these facts, the Court held that the son and father maintained separate domestic establishments:

"there was no showing of temporary absence, no showing that the appellant ever lived at the name insured's residence, no showing of support beyond two meals a day ... [t]here simply are not enough facts to justify a finding that appellant was a resident of the same household as the named insured."

*Id.* 462 P.2d at 911.

Based upon the undisputed facts, there is no genuine issue of material fact which indicates that Plaintiff and his wife resided in the same family unit. The undisputed facts show that the households of Plaintiff and his wife were indeed separate and not the type of family unit as described in the Hawaii No–Fault Law and the language of the policy.

### CONCLUSION

For these reasons, and for good cause shown, this Court finds that Plaintiff is not entitled to coverage for no-fault and UIM benefits. This Court orders summary judgment in favor of State Farm and denies summary judgment requested by Plaintiff.

IT IS SO ORDERED.