974 P.2d 34

Alan D. PARK, Plaintiff–Appellant,

v.

GOVERNMENT EMPLOYEES INSURANCE COMPANY, Defendant–Appellee, and Ann L. Fallon, John Does 1–10, Jane Does 1–10; Doe Partnerships 1–10; Doe Corporations 1–10, Roe "Non–profit" Corporations 1–10 and Roe Governmental Entities 1–10, Defendants.

No. 21507.

Supreme Court of Hawai'i.

Feb. 16, 1999.

Arthur Y. Park, Laurent J. Remillard, Jr., and John C. McLaren of Park Park Yu and Remillard, on the briefs, for plaintiff-appellant.

Tracy G. Chinen and Lance S. Au of Rush Moore Craven Sutton Morry & Beh, on the briefs, for defendant-appellee.

Before MOON, C.J., and KLEIN, LEVINSON, NAKAYAMA, and RAMIL, JJ.

Opinion of the Court by NAKAYAMA, J.

Plaintiff-appellant Alan Park appeals from the circuit court's order granting summary judgment to defendant-appellee Government Employees Insurance Company (GEICO) in this declaratory judgment action. The resolution of this appeal requires initially a determination whether Park was a "relative" of GEICO's insured, Matthew Findlay, for the purpose of a claim for underinsured motorist (UIM) benefits under Findlay's policy. Under the facts of this case, Park and Findlay were "relatives." However, a question remains as to whether Findlay's misrepresentations to GEICO with regard to Findlay's residence address were material for the purpose of avoiding coverage based upon resident relative status. Therefore, the circuit court erred in granting summary judgment. We vacate the circuit court's order and remand for further proceedings.

## I. BACKGROUND

On March 29, 1989, Park was involved in an automobile accident while driving his own vehicle. Park's vehicle was insured by Island Insurance Company. Subsequent to the accident, Park settled with the other driver for the maximum bodily injury liability limit of that driver's automobile insurance policy.

Park then sought UIM benefits under his personal automobile insurance policy.[1] Park also sought UIM benefits under his parents' personal automobile policy. Park and his parents jointly own a residence at 544 Kawainui Street and reside there together.

Park notified GEICO that he was additionally making a claim for UIM benefits on the basis that he was a resident relative of Findlay. Findlay is married to Park's niece, Sonya Findlay, and is insured by GEICO. Findlay's policy contains a provision that GEICO will pay damages to an "insured" injured in an accident. The term "insured" includes "relatives." A "relative" is defined in the policy as "a person related to you who resides in your household."

GEICO denied Park's claim for UIM benefits on the basis that Findlay, according to his policy documents, did not reside at Kawainui Street, but instead resided at 638 Papalani Street. The Papalani Street address is Mr. Findlay's parents' home. On October 21, 1993, Park filed a complaint for declaratory judgment that he was entitled to UIM benefits under Findlay's policy.

On December 15, 1995, Park filed a motion for summary judgment. Park's motion for summary judgment relied upon deposition testimony of Park, his wife, and Findlay. This testimony indicated that Findlay and his wife lived at Kawainui Street on March 29, 1989 and had lived there full-time for many years previously.

On December 21, 1995, GEICO filed a memorandum in opposition to Park's motion for summary judgment and a cross-motion for summary judgment. In support of its cross-motion, GEICO submitted, *inter alia,* the following documentary evidence: (1) Matthew Findlay's application for automobile insurance which listed his residence as 638 Papalani Street, asked him to correct his residence address if necessary and specifically asked if "any vehicle [is] located away from your mailing address," to which Findlay

---

1. UIM coverage provides benefits when a party is injured by an "underinsured motor vehicle." Hawai'i Revised Statutes (HRS) § 431:10C–103 (Supp.1997) defines an "underinsured motor vehicle" as "a motor vehicle with respect to the ownership, maintenance or use for which sum of the limits of all bodily injury liability insurance coverage and self-insurance applicable at the time of loss is less than the liability for damages imposed by law."

replied, "No"; (2) correspondence from GEI-CO to Findlay sent to 638 Papalani Street; (3) Findlay's insurance cards indicating the Papalani Street address; (4) motor vehicle title documents indicating that Findlay's vehicles were registered to the Papalani Street address; (5) Findlay's application for voter registration attesting that he resided at Papalani Street; (6) a loan application for purchase of a vehicle in which Findlay stated that he "lives with parents" at Papalani Street; and (7) loan payment documents sent to Findlay at Papalani Street.

After a hearing on December 21, 1995, the circuit court denied Park's motion for summary judgment and granted GEICO's motion for summary judgment. The relevant findings and conclusions of the court were

[Finding of Fact No.] 4. All documentary evidence, including voter registration, bank loan records, insurance underwriting records, and correspondence between Matthew Findlay and [GEICO] listed Matthew Findlay's residence as 638 Papalani Street, Kailua Hawaii.

5. The sworn deposition testimony of Alan Park, Dorothy Park, and Matthew Findlay indicate that Mr. Findlay physically resided at 544 Kawainui Street at all relevant times herein.

[Conclusion of Law No.] 1. The Court finds that liability insurers have the same rights as individuals to limit their liability, and to impose whatever conditions they please on their obligation, provided they are not in contravention of statutory inhibitions or public policy.

2. The court finds the rule to be [that] policies are construed in accord with the reasonable expectations of a lay person. In addition, policies are governed by statutory requirements in force and effect at the time such policies are written.

3. The court finds that ... the Hawaii Supreme Court ... has pointed out that the purposes of [the UIM statute] was remedial; it was to provide protection for persons injured by an uninsured motorist who cannot pay for personal injuries caused by a motor vehicle accident, and to effect the means of recovery when the innocent victims have shown that there has

been legal liability on the person alleged to be responsible, and the claim cannot be collected because of the financial irresponsibility of that person.

4. The court finds that *Dawes [v. First Ins. Co. of Hawaii]*, 77 Hawai'i 117, 883 P.2d 38 (1994), *Johnson v. [American] Economy Ins. Co.*, 419 N.W.2d 126 (Minn.[App.]1989)[and] the statute ... are highly persuasive.

5. The Court finds that Plaintiff Alan Park was not a resident relative of Matthew Findlay for purposes of the underinsured coverage[.]

. . .

7. The court finds that [Park] is not entitled to pursue a claim for [UIM] benefits under [GEICO's] insurance policy issued to Matthew Findlay.

On September 3, 1997, the court awarded GEICO $989.67 in costs as the prevailing party, but denied GEICO's motion for attorneys' fees. On April 15, 1998, the court entered final judgment in favor of GEICO. Park thereafter appealed.

On appeal, Park argues that (1) the circuit court erred in holding that he was not a resident relative of Findlay and (2) because GEICO was not entitled to summary judgment, the circuit court erred in awarding costs against Park.

## II. DISCUSSION

### A. Park and Findlay were "relatives" for the purposes of GEICO's policy.

Park argues that he and Findlay were "relatives" for the purpose of GEICO's policy, which defined a "relative" as "a person [1] related to you who [2] resides in your household." We agree.

There is no question on appeal that Park was a person "related to" Findlay. The dispositive issue is therefore whether Park "resides in [Findlay's] household." GEICO urges that we adopt a multi-part test for analyzing whether two parties reside in the same household. Specifically, GEICO asserts that the following factors should be considered in determining whether a person resides in the same household as an insured:

(1) separate control and furnishing of rooms within the same house; (2) separate family functions; (3) separate purchases and payments; (4) separate household chores; (5) eating on different schedules; (6) registered traffic address; (7) voter registration address; (8) other documentary records; and (9) likelihood of considering the claimant in contracting for insurance. We reject GEICO's argument as being in contravention of well-established principles of insurance contract interpretation.

The sole opinion from a Hawai'i appellate court addressing the meaning of "resides in the same household" for the purposes of an insurance policy is our decision in *Mun Quon Kok v. Pacific Insurance Co., Ltd.*, 51 Haw. 470, 462 P.2d 909 (1969). In *Tirona v. State Farm Mutual Automobile Insurance Co.*, 812 F.Supp. 1083 (D.Hawai'i 1993), the United States District Court for the District of Hawai'i, using "its own best judgment in predicting how the state's highest court would decide the case," *id.* at 1085, formed an interpretation of the availability of UIM benefits under contractual language similar to that at issue herein. We note initially that, in both of these cases, the court was presented with a factual situation in which two individuals who were not residing in the same residence at the time of the accident, nevertheless claimed benefits as "relatives" of the insured. Neither case presented the dispositive issue herein, *i.e.*, whether two persons residing in the same house, with no showing of physically separate living conditions, are residing in the same "household."

[Insurance] policies are subject to the general rules of contract construction; *the terms of the policy should be interpreted according to their plain, ordinary, and accepted sense in common speech* unless it appears from the policy that a different meaning is intended.... Nevertheless, adherence to the plain language and literal meaning of insurance contract provisions is not without limitation. We have acknowledged that "[b]ecause insurance policies are contracts of adhesion and are premised on standard forms prepared by the insurer's attorneys, we have long subscribed to the principle that *they must be construed liberally in favor of the insured and [any] ambiguities [must be] resolved against the insurer.*" *Sturla, Inc. v. Fireman's Fund Ins. Co.*, 67 Haw. 203, 209, 684 P.2d 960, 964 (1984). *"Put another way, the rule is that policies are to be construed in accord with the reasonable expectations of a layperson."* *Id.*

*Estate of Doe v. Paul Revere Ins. Group*, 86 Hawai'i 262, 271, 948 P.2d 1103, 1112 (1997) (brackets in original) (some citations and internal quotation marks omitted) (emphases added).

In determining whether two persons, residing together, are members of the same "household," some courts have adopted a multi-factor, totality of the circumstances approach. The *Tirona* court noted that:

Most courts have adopted the standard first set forth in *Hoff v. Hoff* [132 Pa.Super. 431] 1 A.2d 506, 508 (1938) when analyzing a claimant's residency:

Neither [blood] relationship nor the presence of all the parties within one dwelling is the determining factor, but rather the existence of such domestic arrangements and circumstances as would create separate domestic establishments, each having its own head and separate management.

812 F.Supp. at 1087–88. The *Tirona* court recited twenty-two factors that have been utilized by various courts to determine whether parties physically residing together nevertheless maintained separate households. *Id.* at 1088 n. 1. However, in *Tirona*, the parties had maintained separate residences in different states for the majority of the thirteen years preceding the accident.[2] The court therefore held, without specifically considering any of the enumerated factors, that "[t]he undisputed facts show that the households of Plaintiff and his wife were indeed separate and not the type of family unit as

2. The claimant was the husband of the insured; however, from the date of their marriage in 1975 until 1989, the date of the accident, the parties had physically resided together only from December 1982 through June 1983 and April 1986 through December 1986. On the date of the accident, the claimant resided in Las Vegas and the insured resided in Waipahu, Hawai'i.

described in the Hawaii No–Fault Law and the language of the policy." *Id.* at 1089.

In *Mun Quon Kok,* the father of the insured filed a claim for uninsured motorist benefits. The stipulated facts were that: (1) the insured and his father maintained separate residences; (2) the insured took two meals a day to his father; and (3) the father received all of his mail at the insured's residence. We noted that "actual residence under a common roof is not an absolute requirement." *Id.* at 471, 462 P.2d at 910. However, we held that

> [i]n this case there was no showing of temporary absence, no showing that appellant ever lived at named insured's residence, no showing of support beyond two meals a day. There simply are not enough facts to justify a finding that appellant was a resident of the same household as named insured.

*Id.* at 472, 462 P.2d at 910. The facts of *Mun Quon Kok* did not require us to reach the issue of what constitutes residing in the same household, when both the claimant and the insured are physically residing in the same residence.

■ In light of the principles of insurance contract interpretation enumerated *supra,* we decline to adopt a complex, multi-factor analysis for determining whether two persons, related to each other, who physically reside in the same residence, are members of the same "household." We construe policy terms liberally, in favor of the insured, and in accord with the reasonable expectations of a layperson. Analyzing, *inter alia,* eating schedules and the delegation of household chores, as urged by GEICO, would be inconsistent with these principles.

■ We noted long ago that

Hawaiian and Asian families of this state have long maintained strong ties among members of the same extended family group. The Hawaiian word ['ohana] has been used to express this concept. It is not uncommon in [Hawai'i] to find several parent-children family units, with members of three and even four generations, living under one roof *as a single family.*

*Leong v. Takasaki,* 55 Haw. 398, 410, 520 P.2d 758, 766 (1974) (emphasis added). We therefore interpret the "reasonable expectations of a layperson" in Hawai'i as an expectation that family members, living in the same residence, are considered members of the same household for the purposes of insurance coverage.

■ In the instant case, GEICO does not dispute that Park and Findlay are related. The deposition testimony, noted in the circuit court's findings of fact, that Findlay and Park physically resided together at Kawainui Street is uncontroverted.[3] Therefore, we hold that, for the purposes of the insurance policy at issue herein, Park and Findlay were "relatives." Unless some other reason exists to deny coverage to Park, he is entitled to UIM benefits as an insured under Findlay's policy with GEICO.

**B. Findlay's misrepresentation to GEICO as to his residence address may be grounds for denying coverage to Park if this misrepresentation is material.**

Park has proven that he and Findlay were "relatives" at the time of Park's accident. Therefore, Park is an insured under the terms of Findlay's policy. However, GEICO argues that Findlay's misrepresentation as to his residence address should bar Park's recovery. Although GEICO fails to correctly identify the legal theory under which Findlay's misrepresentation would bar Park's recovery,[4] it is apparent that, if the misrepre-

---

3. The circuit court's finding of fact number 4, that all documentary evidence listed Findlay's residence as 638 Papalani Street, does not controvert the fact that Findlay actually physically resided at Kawainui Street despite his representation to GEICO that he physically resided at Papalani Street. On appeal, GEICO does not contest that Findlay actually physically resided with Park at the time of the accident.

4. GEICO argues that, even if Park and Findlay were "relatives," Park should be denied coverage because: (1) he does not have standing to assert a claim; (2) he should be equitably estopped from claiming coverage because of Findlay's misrepresentation, see *supra* note 3; and (3) GEICO, Findlay, and Park did not intend nor expect that Park would be covered under Findlay's policy. None of these grounds could possibly support denial of coverage to Park.

sentation was material, it could form the basis for denial of coverage.

The general rule is that "[i]f a party's misrepresentation of assent is induced by either a fraudulent or a material misrepresentation by the other party upon which the recipient is justified in relying, the contract is voidable by the recipient." Restatement (Second) of Contracts § 164(1) (1979). Hawai'i Revised Statutes (HRS) § 431:10–209 (1993) provides that:

> All statements or descriptions in any application for an insurance policy or in negotiations therefor, by or on behalf of the insured, shall be deemed to be representations and not warranties. A misrepresentation shall not prevent a recovery on the policy unless made with actual intent to deceive or unless it materially affects either the acceptance of the risk or the hazard assumed by the insurer.

The United States District Court for the District of Hawai'i, applying Hawai'i law, has held that:

> Before [insurer] is entitled to rescind the policy ... it must establish that the misrepresentations were material—i.e., that the information would have materially affected either the acceptance of the risk or the hazard assumed. In other words, if the misrepresentations relate to [insurer's] decision to insure the risk, or if disclosure would have influenced the rate of premiums, then they are material.

*Gasaway v. Northwestern Mut. Life Ins. Co.,* 820 F.Supp. 1241, 1246 (D.Haw.1993) (citations omitted).

This court has not addressed the issue of whether a misrepresentation in an insurance policy application may render the policy voidable since our decision in *Dye v. U.S. Fidelity & Guaranty Co.,* 31 Haw. 699 (1930).[5] Therein, we held that "[t]he materiality and truth of the statements in the application is usually a question for the jury to determine, as is also the question whether a statement

was made with intent to defraud." *Id.* at 699 (citation omitted). We adopted the position that "[t]he test of materiality is whether the disclosure of the fact would have influenced the rate of premium." *Id.* (citing *Hardman v. Firemen's Insurance Co.,* 20 F. 594 (C.C.E.D.La.1884)).

 We explicitly approve and adopt, as consistent with the requirements of the statute and our holding in *Dye,* the general rule regarding materiality as formulated in 7 *Couch on Insurance 2d* (rev. ed.) § 35:45 (1985). This formulation states that "[g]enerally, a misrepresentation is material, either when the insurer would not, as a careful and intelligent man, have issued the policy had the truth been known, or would have issued it only at a higher rate of premium." (footnote omitted). While the formulation of the *Gasaway* court is functionally similar, the general rule as formulated in *Couch* is, we believe, clearer and more precise. It makes explicit, for example, that for a misrepresentation to be material it must result in a lower premium being paid than if the insurer had been given accurate information.

██ Under the test of materiality that we have adopted herein, for GEICO to prevail in the instant action it must prove either that (1) as a reasonable and prudent insurer, it would not have issued the policy to Findlay had it known of his correct residence address or (2) knowledge of Findlay's actual residence address would have resulted in the issuance of the policy, but at a higher premium. There is insufficient evidence in the record for determination of these questions. Therefore, we remand this matter to the circuit court for further proceedings.

### III. CONCLUSION

For the foregoing reasons, we vacate (1) the circuit court's award of summary judgment in favor of GEICO and (2) the circuit court's award of costs to GEICO as the

---

**5.** In *Estate of Doe, supra,* the parties "stipulated that 'Paul Revere ... waive[s] the affirmative defense of fraud and misrepresentation as a basis to rescind [the policy].' " 86 Hawai'i at 268 n. 17, 948 P.2d at 1109 n. 17 (brackets in original). Therefore, our opinion in that case did not ad-

dress the issue of whether any misrepresentation by Doe on his policy application could have served as a potential basis for denial of coverage had Paul Revere not waived the affirmative defense.

prevailing party and remand for further proceedings.