Keenan v. Geico Gen. Ins. Co., No. 604-8-09 Wrcv (Hayes, J., Apr. 12, 2011)

[The text of this Vermont trial court opinion is unofficial.  It has been reformatted from the original.  The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

STATE OF VERMONT

| | |
|---|---|
| SUPERIOR COURT | CIVIL DIVISION |
| Windsor Unit | Docket No.  604-8-09 Wrcv |

| | |
|---|---|
| Anne Keenan, individually and as executor and administrator of estates, and Nancie Hazell, individually, Plaintiffs  v. Geico General Insurance Co., Defendant | |

DECISION ON MOTION FOR SUMMARY JUDGMENT

Betty Hazell and Helen Hamilton were killed in a car accident on August 25, 2007, as a result of the negligence of a third party driver, Luis Medina, who is not a party to this litigation.   Plaintiffs Anne Keenan and Nancie Hazell are the surviving daughters of Betty Hazell.  Anne Keenan is the executor of her mother's estate, and the administrator of her aunt, Helen Hamilton's estate.  Geico provided auto insurance for Betty Hazell (hereinafter "Hazell") at the time of the accident, including uninsured/underinsured coverage.   The plaintiffs' claims against Helen Hamilton's insurer, Vermont Mutual Insurance Company, have been resolved, and Vermont Mutual has therefore been dismissed as a party-defendant in this matter.

Defendant Geico has moved for summary judgment as to Hamilton's estate, because, they argue, Helen Hamilton (hereinafter "Hamilton") is neither a named insured nor a defined insured under their policy.

Hazell carried automobile insurance through Geico, and was the named insured. She used [address #1 redacted], Chester, Vermont as her address on the policy.  This

was a farmhouse that she had purchased in the 1990s. However, beginning in January 2007, Hazell lived in a rented home located at [address #2 redacted], Chester. Both Hamilton and Hazell resided at this address from January 2007 until their deaths.

Hazell's Geico policy insured several specific vehicles. The uninsured/ underinsured section of the policy provides:

> Under the Uninsured Motorist Coverage we will pay damages for bodily injury or property damage caused by accidents which the insured is legally entitled to recover from the owner or operator of . . . an underinsured auto.
> An "insured" is defined by the policy as:
> (a)  you;
> (b)  your spouse if a resident of your household;
> (c)  relatives of (a) and (b) above if residents of your household.

Geico's motion for summary judgment against Hamilton is based on their argument that the undisputed facts show that she was not a resident of Hazell's household at the time of the accident. The plaintiffs argue that whether Hamilton and Hazell were members of the same household is a contested issue of fact, and that summary judgment should therefore be denied.

On a motion for summary judgment, the court must view the facts in the light most favorable to the non-moving party and determine from those facts whether either party is entitled to judgment as a matter of law. *Price v. Leland*, 149 Vt. 518, 521 (1988).

A careful review of the parties' filings regarding the undisputed facts shows that in addition to those stated above, the following facts are actually undisputed. Betty Hazell (Hazell) and Helen Hamilton (Hamilton) were sisters. At the time of the accident that caused their deaths, Hazell and Hamilton were traveling in Hamilton's motor vehicle, Hamilton was driving, and Hazell was in the passenger seat. At the time of their deaths, Hamilton and Hazell both lived at [address #2], Chester, Vermont, and had both

2

lived at that location for several months. Up until the time when Hazell moved to this address, Hamilton lived in an apartment located upstairs at this address, and another couple lived in a separate apartment downstairs. Each such apartment had its own entrance, kitchen and bath. When Hazell relocated to Vermont from out of state, in January 2007, she moved into Hamilton's upstairs apartment at this address. They lived together in that apartment until May 2007.

The downstairs apartment at [address #2] became available because the other tenants moved out in May 2007. Hamilton had notified the landlords several months earlier that she would like them to plan on her sister moving into the downstairs apartment at [address #2]. At the request of both Hazell and Hamilton, the landlords removed a wall at the base of the stairs that separated the two apartments from one another, and that had provided the former downstairs tenants with a private entrance.

Hazell and Hamilton had separate lease agreements with the landlords, with Hazell renting the downstairs apartment, and Hamilton continuing to rent the upstairs. After signing the lease agreement, Hazell moved many of her personal belongings into the downstairs apartment, and began sleeping in a bedroom located in that apartment. There was not much room in Hamilton's apartment for Hazell's personal belongings. After Hazell signed the lease, both Hazell and Hamilton had access to the basement storage area at [address #2], and shared it. The apartments continued to have separate keys, and separate entrances. Hamilton and Hazell each paid separate rental amounts for the premises at [address #2].

Hamilton and Hazell regularly ate meals and watched television together, usually in the upstairs apartment. They also participated in many social activities together.

3

Factual issues on which there is not agreement include whether the two apartments at [address #2] were in fact used by Hamilton and Hazell as separate residences, whether Hazell actually "lived in" the first floor apartment after May 2007, and Hamilton "lived in" the second floor apartment, whether both women had keys to both the upstairs and downstairs apartments, whether the two maintained entirely separate utility bills, and had different mailing addresses, whether Hamilton took care of Hazell's dogs and allowed the dogs to use both upstairs and downstairs spaces, unfettered, while doing so, and whether the two women had plans for Hamilton to make use of any portion of the downstairs space for crafts or storage.

The plaintiff argues that the undisputed facts are insufficient to answer the question whether Hamilton was actually a relative who was a resident of Hazell's household at the time of their deaths. Many cases from other jurisdictions have addressed similar issues, and most of these are collected in an annotation, Who is "Member" or "Resident" of Same "Family" or "Household" Within No-Fault or Uninsured Motorist Provisions of Motor Vehicle Insurance Policy, 66 A.L.R.5th 269 (1999). The cases state basic agreement on some general principles which are applicable here.

In general, the question whether a person is a resident of another's household is a mixed question of law and fact. *Row v. United Servs. Auto. Ass'n*, 474 So.2d 348, 349 (Fla. Dist. Ct. App. 1985); *State Farm Mut. Auto. Ins. Co. v. Gazaway*, 263 S.E.2d 693, 695 (Ga. Ct. App. 1979); *Perry v. Motorists Mut. Ins. Co.*, 860 S.W.2d 762, 765 (Ky. 1993). The fact that the two people live "under the same roof" is not sufficient, by itself, to show that they are members of the same household. *Tirona v. State Farm Mut. Auto. Ins. Co.*, 812 F.Supp. 1083, 1087 (D.Hawaii 1993); *Drake v. Donegal Mut. Ins. Co.*, 422

4

F.Supp. 272, 273 (D.C. Pa. 1976); *Rainey v. State Farm Mut. Auto. Ins. Co.*, 458 S.E.2d 411, 413 (Ga. Ct. App. 1995); *Ferrel v. Allstate Ins. Co.*, 682 P.2d 649, 650 (Idaho Ct. App. 1984); *Estate of Sturgill v. United Servs. Auto. Ass'n*, 930 P.2d 945, 946 (Wash. Ct. App. 1997). Most cases instead favor an analysis of multiple factors in making a judgment regarding whether a person is a resident of another's household. *Tirona*, 812 F.Supp. at 1087-1088; *Rainey,* 458 S.E.2d at 413*; Hartford Ins. Co. of Midwest v. Casella*, 717 N.Y.S.2d 645, 646 (N.Y. App. Div. 2000).

Some courts have tried to define "household" in simple terms of the location of the persons living there, and their intent. The Missouri Courts have an elegant and fairly simple definition, as follows:

> a collection of persons, whether related by consanguinity
> or affinity or not related at all[,] but who live or reside
> together as a single group or unit which is of a permanent
> and domestic character, with one head, under one roof or
> within a single curtilage; who have a common subsistence
> and who direct their attention toward a common goal
> consisting of their mutual interest and happiness.

*Liberty Mutual Ins. Co. v. Havner*, 103 S.W.3d 829, 833 (Mo. Ct. App. 2003) (quotation omitted). Other states have adopted very similar definitions. See *Furrow v. State Farm Mut. Auto. Ins. Co.*, 375 S.E.2d 738, 740 (Va. 1989) (defining the term "household" as "a collection of persons living together as a single group with one head under one roof, a unit of permanent and domestic character"); *Row v. United Servs. Auto. Ass'n*, 474 So.2d 348, 349 (Fla. Dist. Ct. App. 1985) (explaining that "the main thread of a family household is the sharing of companionship and living facilities in a dwelling unit by members of a household"). The court concludes that these definitions are useful in enunciating the legal conclusions that must be reached in order to determine whether a

5

person is in fact a member of a household.  (The court notes, however, that there is little support in Vermont law for the notion that a household can have only "one head").

However, these definitions also make it clear that there may be many varieties of "households," and that membership may be proven by many different facts.  There are no obvious "bright line" rules.  The enormous variety of factors that may be relevant to this question was perhaps best outlined in *Tirona*, which listed twenty-two of the "more significant" possible issues in cases where household membership is contested.  812 F.Supp. at 1088 n. 1.    Nearly all of these factors might arguably be relevant here, including (some have been consolidated, and some are not relevant):  (1) where the claimed resident slept and ate; (2) where her personal belongings were stored; (3) where she socialized; (4) whether she shared or paid rent separately; (5) whether she shared kitchen facilities; (6) whether she shared appliances or utensils; (7) whether she had free access to all parts of the building; (8) whether she shared a bedroom, living room, or bathroom; (9) whether she shared any entrances; (10) whether and to what degree her household structure was physically separated; (11) whether she shared purchases of groceries and the like; (12) whether she shared utilities, power sources, telephone use or costs; (13) whether she shared laundry facilities; (14) whether she shared chores; (15) whether she shared television and radio; and (16) whether she maintained separate registration and insurance of motor vehicles.

Although several cases from other states have addressed situations where family members all lived under one roof, the court has found none that are truly on point with this one.  See, e.g., *Dusharm v. Nationwide Insurance Co.*, 92 F.Supp.2d 353 (D.Vt. 2000) (holding that minor plaintiff was resident of her mother's household where she had

moved in with her father three months before accident, but kept possessions and bedroom at mother's and was spending two weekends per month with her); *Kepple v. Aetna Life and Cas. Ins. Co.*, 634 So.2d 220 (Fla. Dist. Ct. App. 1994) (daughter was resident of parent's household where they had created a separate living space for daughter and her husband in covered and renovated carport, with separate kitchen and bath); *Row v. United Servs. Auto. Ass'n*, 474 So.2d 348 (Fla. Dist. Ct. App. 1985) (adult son with long history of mental illness and dependence on father was resident of father's household when staying in a one-bedroom apartment in a complex of several such apartments owned by father, while father lived in another such apartment); *Rainey v. State Farm Mut. Auto. Ins. Co.*, 458 S.E.2d 411 (Ga. Ct. App. 1995) (father was not resident of daughter's household where he had another apartment in different town, stayed with daughter in her apartment only a few nights a week, and kept limited personal property in a bedroom there); *Ferrel v. Allstate Ins. Co*., 682 P.2d 649 (Idaho Ct. App. 1984) (adult son was resident of parents' household where he lived in detached bunkhouse with shower and outhouse about 100 yards from the main house on the farm); *Horace Mann Ins. Co. v. Williams*, 769 N.E.2d 1031 (Ill. Ct. App. 2002) (sister and children did not "live with" her other sister when the two owned a two flat house as joint tenants, shared meals and some expenses, left doors unlocked, and daughter in question slept in downstairs bedroom with her female cousin); *Reed v. American Standard Ins. Co. of Wisconsin*, 231 S.W.3d 851 (Mo. Ct. App. 2007) (plaintiff's children were not household members where plaintiff and her children had been temporarily staying with her aunt and uncle, living in the basement, for two months at the time of the accident while looking for alternative housing, and had located other housing, to

7

which they intended to relocate two days later);  *Hartford Ins. Co. of Midwest v. Casella*, 717 N.Y.S.2d 645 (N.Y. App. Div. 2000) (sister not entitled to coverage under her brother's UIM provisions where sister rented upstairs apartment to her niece, and her brother and his wife spent part of the year with the niece, and part of the year in Florida; apartments had separate utilities bills and entrances, but doors were left unlocked; brother testified that he did not see his sister as a member of his household); *Furrow v. State Farm Mut. Auto. Ins. Co.*, 375 S.E.2d 738 (Va. 1989) (adult daughter who was staying with her mother for a few days, with a few personal belongings, before moving into her new boyfriend's home, was not resident of mother's household); *Estate of Sturgill v. United Servs. Auto. Ass'n*, 930 P.2d 945 (Wash. Ct. App. 1997) (daughter was a member of her father's household for purposes of insurance exclusion where they shared a house, with daughter upstairs and father down, she paid rent for upstairs, paid her share of utilities, kept bedrooms locked, and father and daughter did not interact socially or as family).  Of these cases, *Horace Mann Ins. Co. v. Williams* is the case that is the closest on its facts to the current one.  However, *Williams* is distinguishable because it contained scant legal discussion, and relied upon the policy language, not present here, that required that the plaintiff and her children "live with" the insured in order to be covered.   In general, these cases illustrate the variety of fact patterns that may result in different outcomes in situations such as this one.  On the whole, these cases support the court's view that, where there is room for doubt or dispute, the question of household membership should be left to a fact-finder, rather than being decided as a matter of law.

Many of the facts relevant to the question of Hamilton's household membership are disputed—for example (without limitation), whether each sister had a key to both apartments, the exact degree of access each sister had to the other's apartment, the amount of time spent by both sisters in both apartments, the dogs' use of the property, storage of property in both apartments, and whether the sisters shared any expenses or chores. The court therefore concludes that summary judgment is not warranted, and the defendant's motion for summary judgment against Hamilton's Estate is DENIED.

Dated at Woodstock, this     day of April, 2011.


_____
Katherine A. Hayes
Superior Judge